Approved:  _____
           BRENDAN F. QUIGLEY/EMIL J. BOVE III/ILAN GRAFF
           Assistant United States Attorneys

Before:    THE HONORABLE GABRIEL W. GORENSTEIN
           United States Magistrate Judge
           Southern District of New York

16 MAG 3322

------------------------------------X
                                    :
UNITED STATES OF AMERICA            :    SEALED
                                    :    COMPLAINT
         - v. -                     :
                                    :    Violations of
                                    :    18 U.S.C. §§ 2, 1542,
SAJMIR ALIMEHMETI,                  :    and 2339B
a/k/a "Abdul Qawii,"                :
                                    :    COUNTY OF OFFENSE:
         Defendant.                 :    NEW YORK
                                    :
------------------------------------X

SOUTHERN DISTRICT OF NEW YORK, ss.:

       JOSEPH LANDERS, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE

(Provision of Material Support to a Designated Foreign Terrorist Organization)

       1.   From at least in or about September 2014, up to and including in about May 2016, in the Southern District of New York and elsewhere, SAJMIR ALIMEHMETI, a/k/a "Abdul Qawii," the defendant, did knowingly and intentionally provide, and attempt to provide, "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b), to a foreign terrorist organization, to wit, the Islamic State of Iraq and the Levant ("ISIL"), which has been designated by the Secretary of State as a foreign terrorist organization since 2004, pursuant to Section 219 of the Immigration and Nationality Act ("INA"), and is currently designated as such as of the date of the filing of this Complaint, including, among other things, personnel, knowing that ISIL was a designated foreign terrorist organization (as defined in Title 18, United States Code,

Section 2339B(g)(6)), that ISIL engages and has engaged in terrorist activity (as defined in section 212(a)(3)(B) of the INA), and that ISIL engages and has engaged in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

(Title 18, United States Code, Sections 2 and 2339B.)

## COUNT TWO

(Passport Fraud)

2. In or about October 2015, in the Southern District of New York and elsewhere, SAJMIR ALIMEHMETI, a/k/a "Abdul Qawii," the defendant, willfully and knowingly did make false statements in an application for a passport with intent to induce and secure the issuance of a passport under the authority of the United States, for his own use and the use of another, contrary to the laws regulating the issuance of passports and the rules prescribed pursuant to such laws, to wit, ALIMEHETI submitted a passport application stating that his previous passport had been lost when, in truth and fact, ALIMEHMETI had not lost his passport.

(Title 18, United States Code, Section 1542.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

3. I am a Special Agent with the FBI, currently assigned to the New York Joint Terrorism Task Force (the "JTTF"). I have been personally involved in the investigation of this matter, and I base this affidavit on that personal experience, as well as on my conversations with other law enforcement agents, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## The Islamic State of Iraq and the Levant

4. In or about May 2014, the United States Secretary of State formally amended the existing designation of al-Qa'ida in Iraq ("AQI") as a Foreign Terrorist Organization ("FTO") to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name.[1] The State Department has reported that, among other things, ISIL has committed systematic abuses of human rights and violations of international law, including indiscriminate killing and deliberate targeting of civilians, mass executions and extrajudicial killings, persecution of individuals and communities on the basis of their identity, kidnapping of civilians, forced displacement of Shia communities and minority groups, killing and maiming of children, rape, and other forms of sexual violence. According to the State Department, ISIL has recruited thousands of foreign fighters to Iraq and Syria from across the globe and leveraged technology to spread its violent extremist ideology and for incitement to commit terrorist acts.

## Overview

5. SAJMIR ALIMEHMETI, a/k/a "Abdul Qawii," the defendant, is a 22-year old resident of the Bronx, New York. As set forth in greater detail below, in May 2016, ALIMEHMETI attempted to facilitate the travel of, and provided advice and assistance to, an individual he believed was traveling from New York City to Syria to train and fight with ISIL. Since at least 2014, ALIMEHMETI has repeatedly demonstrated his support for ISIL, as evidenced by material obtained during searches of his electronic

---

[1] On October 15, 2004, the United States Secretary of State designated AQI, then known as Jam'at al Tawhid wa'al-Jihad, as an FTO under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist under section 1(b) of Executive Order 13224. On or about May 14, 2014, the Secretary of State amended AQI's FTO under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add ISIL as its primary name. The Secretary also added the following aliases to the ISIL listing: the Islamic State of Iraq and al-Sham, the Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. Although the group has never called itself "al-Qaida in Iraq (AQI)," this name has frequently been used to describe it through its history.

media and statements he has made to undercover law enforcement agents, among other things. Further, since mid-2015, ALIMEHMETI has made multiple purchases of military-style knives and other military-type equipment, including masks and steel-knuckled gloves.

6. In addition, in the fall of 2015, SAJIMR ALIMEHMETI, a/k/a "Abdul Qawii," the defendant, attempted to fraudulently obtain an additional United States passport, because he believed that doing so would facilitate his own travel overseas.

### ALIMEHMETI's 2014 Attempted Entries into the United Kingdom

7. Based on my review of reports and evidentiary materials obtained from authorities in the United Kingdom (the "U.K."), I have learned the following:

    a. On or about October 24, 2014, SAJMIR ALIMEHMETI, a/k/a "Abdul Qawii," the defendant, attempted to enter the U.K., via Manchester Airport. ALIMEHMETI was denied entry after authorities found camouflage pants and shirts, as well as nunchucks, in ALIMEHMETI's luggage.

    b. Less than two months later, on or about December 18, 2014, ALIMEHMETI again attempted to enter the U.K. via Heathrow Airport. U.K. authorities temporarily seized ALIMEHMETI's cellphone and laptop computer and ascertained that ALIMEHMETI's cellphone contained a number of images of ISIL flags and improvised explosive device ("IED") attacks. After further investigation, U.K. authorities again denied ALIMEHMETI entry into the U.K. and sent him back to the United States.

### ALIMEHMETI's Cellphone and Laptop Computer Contained Evidence of ALIMEHMETI's Support for ISIL

8. U.K. authorities later provided the FBI with copies of electronic images of the cellphone and the laptop computer that had been found in the possession of SAJMIR ALIMEHMETI, a/k/a "Abdul Qawii," the defendant, when he attempted to enter the U.K. in December 2014. The FBI has reviewed the copies of electronic images of the cellphone and the computer and found numerous pieces of evidence establishing ALIMEHMETI's support

for ISIL. For example, ALIMEHMETI's computer contained the below picture of ALIMEHMETI with an ISIL flag in the background:[2]



9. In addition, the computer contained multiple photographs of what appear to be ISIL fighters in the Middle East. For example:



10. Notably, the computer also contained multiple photographs of SAJMIR ALIMEHMETI, a/k/a "Abdul Qawii," the defendant, in Middle Eastern attire making the same index-finger pointing gesture as the ISIL fighters in the photos above. For example:

---

[2] I know that the person in this photograph is ALIMEHMETI based on, among other things, my review of passport and criminal history photos of ALIMEHMETI.

5



11. Based on my training and experience, I have learned that the index-finger pointing gesture depicted in the preceding paragraphs has repeatedly appeared in ISIL videos and is a sign used to reflect support for ISIL.

12. The laptop computer of SAJMIR ALIMEHMETI, a/k/a "Abdul Qawii," the defendant, also contained audio files of multiple lectures concerning jihad and martyrdom, including some by Anwar al-Awlaki. Al-Awlaki was a prominent leader of, and a recruiter for, al-Qa'ida in the Arabian Peninsula, al-Qa'ida's branch in Yemen, who was killed in 2011. The names of these files included:

    a. Jihad = Fighting-Anwar Al Awlaki.mp3;

    b. Hellfire and Its Life-Anwar Al Awlald.mp3;

    c. On the Command of Jihad-Anwar Al Awlaki.mp3;

    d. Advise to the Ones Who Stay Behind-Anwar Al Awlalci.mp3;

    e. Imam Anwar al Awlald on Islamic State of Iraq and Sham (ISIS) -Sheikh Anwar al Awlald.mp3; and

    f. The Punishment of Those Who Don't Participate in Jihad-Anwar Al Awlaki.mp3.

### ALIMEHMETI's Purchases of Military-Style Knives and Equipment

13. In addition, since the summer of 2015, SAJMIR ALIMEHMETI, a/k/a "Abdul Qawii," the defendant, has bought numerous knives, as well as other military-type equipment. Specifically, based on my review of records obtained from a major online retailer, I have learned that, over the last 11

months, ALIMEHMETI has purchased, among other things, the following:[3]

      a.    Two Cold Steel 53NCT Tanto Spike Knives



      b.    An Ontario 499 Air Force Survival Knife



      c.    A "Credit Card Sized Folding Knife" and a "24-Inch Survival Pocket Chain Saw"



---

[3] The photographs that follow are from the online retailer's website and depict the corresponding items that SAJMIR ALIMEHMETI, a/k/a "Abdul Qawii," the defendant, purchased.

7

    d.    A Rothco Reversible Face Mask



    e.    A set of Smith and Wesson Handcuffs



    f.    Gloves with steel knuckles



**ALIMEHMETI Attempts to Assist an Undercover Law Enforcement Employee in Traveling to ISIL**

14. Based on my involvement in this investigation, including my review of, and participation in, debriefings of undercover law enforcement employees of the FBI and the New York City Police Department ("NYPD"), and recordings of certain meetings involving SAJIMR ALIMEHMETI, a/k/a "Abdul Qawii," the defendant, I have learned the following:

   a. In or about the fall of 2015, ALIMEHMETI met an individual, who was actually an undercover law enforcement employee ("UC-1"). Since the fall of 2015, UC-1 has repeatedly met with ALIMEHMETI, including in ALIMEHMETI's apartment in the Bronx (the "Apartment"). During these meetings, UC-1 has observed ALIMEHMETI displaying the ISIL flag in the Apartment and has seen ALIMEHMETI play multiple ISIL videos on his computer and phone.

   b. In or about February 2016, UC-1 introduced ALIMEHMETI to another individual, who was an undercover law enforcement employee ("UC-2"). Thereafter, ALIMEHMETI attempted to contact UC-2 but was unsuccessful.

   c. On or about May 9, 2016, UC-1 met with ALIMEHMETI in the Apartment and showed ALIMEHMETI a picture of UC-2, at a desert-like location, and waving the flag used by ISIL, depicted in paragraph 8 above. UC-1 indicated, in sum and substance, that UC-2 had traveled overseas and joined ISIL. Upon seeing the photo, ALIMEHMETI expressed excitement and indicated, in sum and substance, that he was jealous of UC-2 and that UC-2 should "hook [him] up" with UC-2's "connections." Later during this meeting, ALIMEHMETI played two ISIL-produced music videos, commonly referred to as "nasheeds." One of the nasheeds showed ISIL fighters decapitating prisoners. ALIMEHMETI stated, in sum and substance, that these nasheeds keep him motivated while he is exercising.

   d. On or about May 16, 2016, UC-1 met with ALIMEHMETI in Queens, New York. During this meeting, UC-1 stated, in sum and substance, that UC-1 had to pick-up a friend of UC-2's who was coming into New York the following day and asked whether ALIMEHMETI wanted to join him. ALIMEHMETI responded affirmatively. UC-1 stated that UC-2's friend would be staying in New York for only a few hours, before boarding a plane. Later UC-1 and ALIMEHMETI rode in a car together from Queens to the Apartment. During the car ride, UC-1 stated, in sum and substance, that the individual who they were going to

meet the following day was going to the same place that UC-2 had gone, i.e., to join ISIL. ALIMEHMETI expressed his excitement at this and inquired whether he could travel with UC-2's friend.

   e. The following day, UC-1 met with ALIMEHMETI in the Bronx, and they drove to Manhattan to meet with UC-2's purported friend, who was actually an undercover law enforcement employee ("UC-3") and who had purportedly arrived in New York on a bus earlier that day. ALIMEHMETI asked, in sum and substance, where UC-2 was. UC-1 responded, in sum and substance, "Raqqah," the capital of ISIL's purported caliphate. ALIMEMHETI stated, in sum and substance, that was good, and he wanted to go to Raqqah, as opposed to other locations where ISIL has a presence, such as Iraq and Libya, because Raqqah was the "heart" of ISIL's operations.

   f. UC-1 and ALIMEHMETI met with UC-3 in Manhattan and went to a nearby restaurant for lunch. ALIMEHMETI, in sum and substance, asked UC-3 a number of questions about how UC-3 obtained a passport and the route UC-3 was taking to Syria. ALIMEHMETI stated that he had $2,500 saved for his own travel but still needed a passport and "needed to see someone" to obtain a passport in a different name, because his name was already "in the system." ALIMEHMETI added that he and his brother "had our own plan" to travel from Albania to Raqqah but that his brother had been arrested in Albania.[4]

   g. After UC-1, UC-3, and ALIMEHMETI finished their meal, UC-1 indicated that UC-1 had business to attend to. UC-1 asked ALIMEHMETI, in sum and substance, whether he could take UC-3 "around to some places," including the airport. ALIMEHMETI agreed to do so, and UC-1 left ALIMEHMETI alone with UC-3.

   h. UC-3, in sum and substance, asked ALIMEHMETI to help UC-3 find hiking boots to purchase for UC-3's trip. ALIMEHMETI stated, in sum and substance, that UC-3 may not need hiking boots because ALIMEHMETI has seen "brothers" in "videos" wearing sneakers. Based on my training, experience, and involvement in this investigation, I believe ALIMEHMETI's reference to "brothers" in "videos" was a reference to videos of ISIL fighters.

---

[4] Based on my involvement in this investigation, I know that ALIMEHMETI's brother was arrested on weapons and assault charges in Albania in August 2015.

          i.   ALIMEHMETI used his phone to locate a sporting goods store in Manhattan. ALIMEHETI then brought UC-3 to the store, and UC-3 purchased two pairs of boots, one for UC-3 and the other for UC-2, who was purportedly fighting with ISIL. While UC-3 was looking at boots, ALIMEHMETI provided advice and suggestions on the best kind of boots for UC-3 to purchase.

          j.   In addition, UC-3 indicated, in sum and substance, that UC-3 needed a new cellphone to use while overseas. ALIMEHMETI located a nearby cellphone store and brought UC-3 there. While en route to the phone store, UC-3 stated, in sum and substance, that UC-3 was waiting for a call from the individual who had obtained a passport for UC-3 (the "Document Facilitator"). ALIMEHMETI asked, in sum and substance, whether UC-3 could "tell the [Document Facilitator] about me too." UC-3 stated, in sum and substance, that UC-3 could not introduce ALIMEHMETI to the Document Facilitator but could give the Document Facilitator ALIMEHMETI's "number." ALIMEHEMTI then stated, in an excited voice, "I'm ready to fucking go with you, man . . . you know I would . . . . I'm done with this place. There are kuffar everywhere." Based on my training, experience, and involvement in this investigation, I believe that, in saying this, ALIMEHMETI was indicating his own desire to travel to and join ISIL.[5]

          k.   After arriving at the phone store, ALIMEHMETI, without direction from UC-3, asked a store employee for a used phone. ALIMEHMETI confirmed with the employee that the phone was unlocked and asked whether the battery was charged. ALIMEHMETI also provided the store employee with his own zip code, so the employee could set up the phone. UC-3 then purchased the phone selected by ALIMEHMETI.

          l.   ALIMEHMETI and UC-3 also discussed encrypted communications "apps." ALIMEHMETI stated that one such app ("Encrypted Communications Platform-1") is compromised and that "the brothers" are now using another "app" ("Encrypted Communications Platform-2"). ALIMEHMETI stated that he previously used Encrypted Communications Platform-1, and it had to have been good, because if it had not been, then he "would be done." Based on my training, experience, and involvement in this investigation, I believe that ALIMEHMETI was indicating that if his communications over Encrypted Communications

---

[5] Further, based on my training, experience, and participation in this and other investigations, I understand that "kuffar" is a derogatory term non-believers.

Platform-1 had been intercepted, he would likely have been arrested ("would be done"). ALIMEHMETI further advised UC-3 that even when using encrypted applications like Encrypted Communications Platform-2, "don't say things straight up."

        m.    ALIMEHMETI also told UC-3, in sum and substance, that they should go back to the Apartment in the Bronx, where ALIMEHMETI could provide UC-3 with additional supplies, which ALIMEHMETI had purchased online. As noted above, ALIMEHMETI has made multiple purchases of knives and military and survival-type equipment. Ultimately, ALIMEHMETI decided not to go back to the Apartment, reasoning that would not allow UC-3 enough time to make UC-3's flight later that evening.

        n.    ALIMEHMETI also suggested that UC-3 purchase a compass and that they should find a military-surplus store. After locating such a store, ALIMEHMETI brought UC-3 to the store. While there, UC-3 purchased a compass, a bag, and a flashlight, among other things. Again, ALIMEHMETI provided advice on the best types of items to purchase.

        o.    UC-3 told ALIMEHMETI, in sum and substance, that, before going to the airport, UC-3 needed to go to a hotel (the "Hotel") in Queens to briefly meet with the Document Facilitator in order to receive travel documents. UC-3 and ALIMEHMETI then took the subway to the Hotel. UC-3 stated, in sum and substance, that UC-3 wanted to download "apps" on UC-3's new phone, so UC-3 could engage in encrypted communications. While UC-3 went to a room in the Hotel, purportedly to meet with the Document Facilitator, ALIMEHMETI remained in the lobby and downloaded Encrypted Communications Platform-1, Encrypted Communications Platform-2, and a third such app ("Encrypted Communications Platform-3") onto UC-3's phone. ALIMEHMETI also provided UC-3 with a piece of paper containing his contact information, so UC-3 could provide that to the Document Facilitator.

        p.    Thereafter, ALIMEHMETI and UC-3 left the Hotel, and AILMEHMETI brought UC-3 to John F. Kennedy International Airport, so UC-3 could purportedly travel overseas and join ISIL.

### ALIMEHMETI Attempts to Fraudulently Obtain a United States Passport

15. Based on my review of a passport application obtained from the United States Department of State, I have learned that, on or about October 23, 2015, SAJMIR ALIMEHMETI, a/k/a "Abdul Qawii," the defendant, applied for a U.S. passport. ALIMEHMETI claimed that his previous passport had been lost on October 4, 2015 when he "forgot [it] in [a] bag in a train." ALIMEHMETI signed the application, declaring under penalty of perjury that, among other things, "the information furnished herein is correct and complete."

16. However, SAJMIR ALIMEHMETI, a/k/a "Abdul Qawii," the defendant, later admitted that he had not, in fact, lost his passport but, instead, wanted a new passport because he believed traveling on his old passport—which had rejection stamps from his two 2014 trips to the United Kingdom—would raise suspicions during his planned travels.

17. Specifically, on or about November 23, 2015, an undercover law enforcement employee ("UC-4") met with SAJMIR ALIMEHMETI, a/k/a "Abdul Qawii," the defendant, in the Apartment. Based on my review of a recording of that meeting, and a report concerning the meeting, I have learned the following:

   a. During the meeting, ALIMEHMETI logged onto his computer and played a video showing graphic depictions of ISIL slaughtering prisoners by decapitation and other means.

   b. Later in the meeting, ALIMEHMETI stated, in sum and substance, that he recently visited the U.S. passport agency and that the Government agents "tried to question [him] today about fraud" in connection with his passport application.

   c. In the context of this discussion, ALIMEHMETI told UC-4, in sum and substance, that he reported his prior passport "lost because I don't want . . . the rejection stamps." ALIMEHMETI then displayed his prior, purportedly lost passport,

which contained the rejection stamps from ALIMEHMETI's October and December 2014 attempted entries into the United Kingdom.

WHEREFORE, deponent prays that a warrant be issued and that SAJMIR ALIMEHMETI, a/k/a "Abdul Qawii," the defendant, be imprisoned or bailed, as the case may be.

_____
JOSEPH LANDERS, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to before me this
23rd day of May, 2016

_____
THE HONORABLE GABRIEL W. GORENSTEIN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK