G693ALIC                    Arraignment

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          16 CR 398 (PAE)

5    SAJMIR ALMEHMETI,

6                Defendant.

7    ------------------------------x

8                                          New York, N.Y.
                                           June 9, 2016
9                                          3:00 p.m.

10
     Before:
11
                    HON. PAUL A. ENGELMAYER,
12
                                           District Judge
13

14                        APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     BRENDAN QUIGLEY
17   EMIL BOVE
          Assistant United States Attorneys
18
     FEDERAL DEFENDERS OF NEW YORK
19        Attorneys for Defendant
     SABRINA SHROFF
20

21

22

23

24

25
```

G693ALIC

1          THE DEPUTY CLERK:  In the matter of the United States

2    v. Alimehmeti.  Please state your appearance for the record.

3          MR. QUIGLEY:  Good afternoon, your Honor.  Brendan

4    Quigley and Emil Bove for the United States.

5          THE COURT:  Good afternoon to you.

6          MS. SHROFF:  Good afternoon, your Honor.  For

7    Mr. Sajmir Alimehmeti, Federal Defenders of New York by Sabrina

8    Shroff.

9          THE COURT:  Good afternoon, Ms. Shroff, and good

10   afternoon to you, Mr. Alimehmeti.  Do I have that correctly?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Good afternoon to you, and good afternoon

13   to the members of the public who are here.  You may all be

14   seated.

15          My understanding, Mr. Quigley, is that the defendant

16   was arrested on a complaint, presented in magistrate's court,

17   but this will be the first opportunity for him to be arraigned

18   on the indictment.  Correct?

19          MR. QUIGLEY:  That's correct, your Honor.

20          THE COURT:  When was the indictment returned?

21          MR. QUIGLEY:  The indictment was returned on Tuesday,

22   your Honor.

23          THE COURT:  Ms. Shroff, I'll then proceed to arraign

24   your client on the indictment.  May I just confirm with you,

25   Ms. Shroff, you have shown your client the indictment and he's

G693ALIC

1   had an opportunity to read it?

2              MS. SHROFF:  Yes, your Honor.  My colleague

3   Ms. Levine, who cannot be here today, and I have reviewed the

4   indictment.  We both reviewed it with him.

5              THE COURT:  Have you had an opportunity to review with

6   him the questions that I'll be putting to him by way of

7   arraignment?

8              MS. SHROFF:  I have reviewed those questions with him.

9              THE COURT:  Let me say to the defendant -- I want to

10  make sure I have the pronunciation right.  "Alimehmeti"?

11             THE DEFENDANT:  Alimehmeti, yes.

12             THE COURT:  I'm going to ask you a handful of

13  questions right now, before asking you ultimately this

14  question, which is how do you plead to the charges.  That's

15  ultimately the question I'm going to put to you.  But before I

16  do that, I'm going to ask you a few questions just about your

17  mental health, and about the use of any drugs or alcohol.

18             The only reason I'm asking you these questions is to

19  make sure that you are of sound mind before I ask you the

20  question about how you plead.  So I want you to understand

21  that's the reason I am asking you those questions, okay?

22             THE DEFENDANT:  Okay.

23             THE COURT:  Very good.  What is your full name?

24             THE DEFENDANT:  Sajmir Alimehmeti.

25             THE COURT:  How old are you, sir?

G693ALIC

```
1              THE DEFENDANT:  22.

2              THE COURT:  A little louder.

3              THE DEFENDANT:  22.

4              THE COURT:  22?  How far did you go in school?

5              THE DEFENDANT:  I was currently in private college

6    prior to my arrest.

7              THE COURT:  You're currently in college?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Where is that?

10             THE DEFENDANT:  AAMI, funeral directing college.

11             THE COURT:  Where is that?

12             THE DEFENDANT:  In West 54th Street and 11th Avenue.

13             THE COURT:  Are you able to speak and understand

14   English?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Have you ever been treated or hospitalized

17   for any mental illness?

18             THE DEFENDANT:  No.

19             THE COURT:  Have you ever been hospitalized or treated

20   for addiction to any drugs or to alcohol?

21             THE DEFENDANT:  No.

22             THE COURT:  Are you now or have you recently been

23   under the care of a doctor or a psychiatrist?

24             THE DEFENDANT:  No.

25             THE COURT:  In the past 24 hours, have you taken any
```

G693ALIC

1      drug, medicine or pills, or drunk any alcoholic beverages?

2                THE DEFENDANT:  No.

3                THE COURT:  Is your mind clear today?

4                THE DEFENDANT:  Yes.

5                THE COURT:  Do you understand what's happening in this

6      proceeding?

7                THE DEFENDANT:  Yes.

8                THE COURT:  Have you received a copy of the indictment

9      in this case?

10               THE DEFENDANT:  Yes.

11               THE COURT:  Have you had an opportunity to consult

12     with your attorney about the indictment?

13               THE DEFENDANT:  Yes.

14               THE COURT:  Do you wish to have the indictment read

15     aloud or do you waive its public reading?

16               THE DEFENDANT:  I waive its public reading.

17               THE COURT:  Thank you.  How do you plead to the

18     charges in the indictment?

19               THE DEFENDANT:  Not guilty.

20               THE COURT:  Thank you.

21               Does either counsel believe any further questions need

22     be put to the defendant by way of arraignment?

23               MR. QUIGLEY:  No, your Honor.

24               MS. SHROFF:  No, thank you, your Honor.

25               THE COURT:  Very good.  With that, Mr. Quigley, can

G693ALIC

1    you tell me a little bit about the case.

2              MR. QUIGLEY:  Yes, your Honor.  The defendant is

3    charged in a two-count indictment.

4              Count One charges him with providing and attempting to

5    provide material support to a designated foreign terrorist

6    organization, specifically the Islamic State of Iraq and the

7    Levant, also known as ISIL or ISIS.  And the defendant took a

8    number of steps to provide support or attempt to provide

9    support for ISIS since September 2014.  And most recently last

10   month he attempted to assist an individual who is purportedly

11   traveling overseas to train and fight with ISIS in Syria.

12             Count Two charges the defendant with making a false

13   statement in an application for a United States passport.  And

14   specifically here, in October 2015, the defendant submitted an

15   application for a passport claiming his previous passport was

16   lost.  He was later recorded in a conversation with an

17   undercover law enforcement employee admitting that he had not

18   in fact lost his passport, and that he was seeking a new

19   passport because his old passport had rejection stamps on it.

20   And in fact, the old passport was located the day of the

21   defendant's arrest during a search warrant at his residence.

22             THE COURT:  Thank you.  Tell me about the Rule 16

23   discovery in the case.

24             MR. QUIGLEY:  Your Honor, there are essentially I

25   think four main categories of Rule 16 discovery.  The first

G693ALIC

1  would consist of search warrant returns from social media

2  search warrants.  The next category would --

3          THE COURT:  Those are social media websites of the

4  defendant's or other people's or both?

5          MR. QUIGLEY:  Both, your Honor.

6          The second category, and I think the largest category

7  in terms of volume, would consist of materials from electronic

8  media belonging to the defendant.  Some of those materials were

9  received via MLAT.  They're discussed in the complaint.  Some

10  of those materials were received or obtained during a search

11  warrant that we undertook during the course of the

12  investigation.  And some those materials were obtained during

13  the premises search warrant that was executed at the

14  defendant's apartment.

15          And the premises search warrant alone, there were

16  approximately three cell phones, three computers, and I think

17  over 10 external hard drives of various types.  So all together

18  we'd estimate the volume of that category of discovery is

19  approaching four terabytes.  So it's somewhat voluminous.

20          THE COURT:  I take it you've not had an opportunity to

21  assess how much of those terabytes are potentially relevant as

22  opposed to being clearly extraneous.

23          MR. QUIGLEY:  That's correct, your Honor.

24          THE COURT:  That's two categories.  You said there

25  were four?

G693ALIC

1          MR. QUIGLEY:  The third category is recordings and

2     other materials related to meetings that the defendant had with

3     undercover law enforcement employees.

4          And the final category I would describe as

5     miscellaneous documentary evidence, bank records, passport

6     records and filings for the defendant.  Things of that nature.

7     That's probably the smallest category.

8          THE COURT:  When do you expect to be able to produce

9     these materials to the defense?

10         MR. QUIGLEY:  We would estimate we would -- we've

11    given the defense a stipulated protective order, so as soon as

12    we get a protective order signed, we can begin producing the

13    materials.  And we'd estimate it will take approximately two to

14    three weeks to produce the materials I've just described.

15         THE COURT:  I take it all of this will be produced

16    electronically?

17         MR. QUIGLEY:  Yes, your Honor, yes.  For the

18    electronic media we'll be asking the defense to provide a hard

19    drive.

20         THE COURT:  All right.  You know that I ask this in

21    every initial conference, but tell me as best as you can all of

22    the Fourth, Fifth, and Sixth Amendment events that you are

23    presently aware of in the case.  And I ask this question just

24    for the defense benefit, because at an early stage in the case

25    if there is going to be a potential suppression hearing, I like

G693ALIC

1    to be able to schedule it and schedule appropriate briefing.

2    So I try to use the first conference to identify the events,

3    searches, seizures, post-arrest statements, line-ups, that sort

4    of thing, that tend to be the fodder for suppression motions.

5            I've heard you describe a number of search warrants.

6    Just can you lay out for me various searches, seizures, and

7    other responsive events, if any.

8            MR. QUIGLEY:  Yes, your Honor.  So all of the

9    searches -- well, all the electronic materials in this case

10   were either obtained via search warrants, or in one case,

11   obtained via an MLAT after a foreign government conducted a

12   search, and that's the materials from the United Kingdom that

13   are referenced in the complaint.  So there were no exceptions

14   to the warrant requirement.

15           THE COURT:  There were no domestic searches other than

16   pursuant to an authorized search warrant?

17           MR. QUIGLEY:  Correct.  And there is no post-arrest

18   statement to speak of nor were there any line-ups.

19           THE COURT:  The defendant was not interviewed post

20   arrest?

21           MR. QUIGLEY:  Basic pedigree information, your Honor.

22   He invoked.

23           THE COURT:  No line-ups?

24           MR. QUIGLEY:  No.

25           THE COURT:  Have you had any initial discussions with

G693ALIC

1    the defense about a next date in the case?

2              MR. QUIGLEY:  We have not, your Honor.  No.

3              THE COURT:  Anything else you want to put on the

4    record at this point before I turn to Ms. Shroff?

5              MR. QUIGLEY:  Just briefly, your Honor.  All the

6    materials that I've described in terms of discovery so far are

7    unclassified.  I think it is likely we'll produce additional

8    materials in classified discovery and/or engaging in motion

9    practice under the Classified Information Procedures Act.

10   We're currently actively working with representatives from the

11   FBI and people in Washington, D.C. to obtain the necessary

12   approvals to produce any materials.

13             THE COURT:  What is the timetable on that?

14             MR. QUIGLEY:  We'd estimate 35 to 45 days, your Honor.

15             THE COURT:  To the extent you can say, and maybe you

16   can put it in terms of the elements of the offense, what

17   category or what issues would that material likely be germane

18   to?

19             MR. QUIGLEY:  Potentially state of mind.  State of

20   mind.

21             THE COURT:  This would not relate, I take it, to the

22   classification of ISIL, which is a juridical fact.  This would

23   go to issues specific to this defendant?

24             MR. QUIGLEY:  Yes, your Honor.

25             THE COURT:  Very helpful.

G693ALIC

1              Ms. Shroff, anything from you?

2              MS. SHROFF:  Sure.

3              THE COURT:  I realize you've got a forbidding amount

4    of discovery coming your way.  Tell me what next date in the

5    case you would like to be, how long you're going to need to

6    review the discovery, how you would like to proceed.

7              MS. SHROFF:  Your Honor, I want to be clear about --

8    may I just address certain issues that -- may I address certain

9    issues?

10             THE COURT:  Of course.

11             MS. SHROFF:  One is I just want to start with

12   something the government just said.  He said Mr. Alimehmeti

13   invoked.  Right?

14             THE COURT:  I understood Mr. Quigley to be saying

15   that, by shorthand, that your client was advised of his rights

16   under Miranda and he invoked his rights under Miranda.

17             MS. SHROFF:  Your Honor, it is our position -- our

18   investigation reveals that the law enforcement entities at play

19   here were with Mr. Alimehmeti for a period of approximately

20   three hours, prior to the invocation.  To the extent that those

21   questions are noted somewhere, and any 302s created as a result

22   of that three-hour questioning should be made available to us

23   as part of Rule 16 discovery.

24             THE COURT:  Let me see if I understand.  You are

25   saying that before your client was given a Miranda warning and

G693ALIC

1    invoked, he was questioned for three hours?

2              MS. SHROFF:  Either he was given Miranda warnings and

3    then talked to for three hours, or he intermittently invoked

4    and they continued to talk to him.  Whatever it is, I don't

5    know what's in there.  But if I'm wrong, Mr. Quigley can let me

6    know I'm wrong.  But --

7              THE COURT:  Mr. Quigley?

8              MS. SHROFF:  If I'm right --

9              THE COURT:  Mr. Quigley, is there anything you can put

10   on the record as to the series of events leading to the arrest

11   of the defendant and where the Miranda warnings are situated in

12   that series?

13             MR. QUIGLEY:  Your Honor, we're not aware of any

14   substantive post-arrest statement.  We are aware of our -- I

15   understand he invoked relatively early on.  Certainly if there

16   were any post-arrest statement that he made to law enforcement,

17   that would be discoverable and will be produced.

18             THE COURT:  I think what Ms. Shroff may be saying is

19   that she may situate the moment of arrest earlier than you do.

20   I'm not opining on who is right or who is wrong.  She may be

21   saying that her client was effectively in custody at some

22   period of time before Miranda warnings were given, and

23   therefore that the warnings should have been given earlier, and

24   that because the several circumstances amount to a de facto

25   arrest, any statements made afterwards pre-Miranda would be

G693ALIC

1    suppressible.

2            Ms. Shroff, I'm putting words in your mouth.  Is that

3    more or less what you are trying to say in legalese?

4            MS. SHROFF:  That's one part.  But there is also the

5    other part where I'm trying to see -- I'm trying to figure out

6    if the government is going to give me the 302s of the entire

7    process from when they sat Mr. Alimehmeti down until the time

8    he invoked, which seems to be a period of more than an hour,

9    more than two, and almost up to three hours.

10           THE COURT:  Mr. Quigley, I take it you know of your

11   obligation that if there is anything said to law enforcement by

12   the defendant, that needs to be produced.

13           MR. QUIGLEY:  Absolutely, your Honor.

14           THE COURT:  Ms. Shroff, apart from that, let us

15   suppose that your supposition is that the government talked at

16   your client for a period of time, apparently before the Miranda

17   warning, maybe after, but your client said nothing.  You're

18   asking if there is a memo that records that, for that memo to

19   be produced.

20           MS. SHROFF:  Exactly.

21           THE COURT:  On what authority?

22           MS. SHROFF:  I think it is Rule 16 because they

23   intermittently spoke to him.  Whether or not they plan to use

24   my client's statements or not, it is still my client's

25   statements to them.  So, hypothetically, say they said to him

G693ALIC

1    you have these rights, and he replied "could you explain right

2    number five to me."

3              THE COURT:  It is premature for me to resolve anything

4    here.  I will say this:  Mr. Quigley has acknowledged his

5    obligation to produce any statements of your client.  If there

6    are no such statements, it is not clear that anything sounding

7    in Miranda would be generated by this exchange.

8              Nevertheless, I would suggest what you do is let's see

9    what you get from the government in discovery.  And if you

10   believe, based on your client, your discussions with your

11   client or your other investigation, that there is something

12   else you have a right to, whether under Rule 16, Brady,

13   otherwise, Miranda, and Mr. Quigley won't give it to you, I'm

14   happy to receive a very prompt motion.

15             MS. SHROFF:  Okay.

16             THE COURT:  I think that's about as far as I can go

17   right now.

18             MS. SHROFF:  That's fine.

19             THE COURT:  Okay.

20             MS. SHROFF:  On the different categories of

21   information, your Honor, of course we'll provide the hard drive

22   to the government.  We would like the Court to rule on a

23   matter --

24             THE COURT:  Just explain to me, I didn't follow that.

25   You are in possession of a hard drive which the government is

G693ALIC

1    seeking?

2             MS. SHROFF:  We're going to give them a blank hard

3    drive so they can copy it for us.

4             THE COURT:  I see.

5             MS. SHROFF:  I'll make sure Mr. Quigley gets an extra

6    one so he can send it to my client in custody.

7             THE COURT:  Right.

8             MS. SHROFF:  There is an issue on the protective

9    order, and of course I do apologize, I should have briefed it

10   earlier on.  But I can certainly write to the Court and ask the

11   Court for I think somewhat of a ruling on it.

12            The problem with the protective order, as it is

13   written now, is it precludes us, without making a motion to the

14   Court, from sharing the discovery with any fact witness.

15            So, just to get the procedure, the case going, the

16   discovery started, we could proceed in one of two ways.  I

17   could sign the protective order now, because we don't have fact

18   witnesses that we need to show it to, and then litigate the

19   protective order.  But we don't want the government coming back

20   and saying you signed it once, so you can't litigate it down

21   the road.

22            THE COURT:  You are putting on the record right now if

23   you sign the protective order, it is without prejudice to your

24   right to seek from the government, and if you don't have

25   success with the government, seek from me, a modification of

G693ALIC

1   the term that restricts you from describing contents to a fact

2   witness.

3           MS. SHROFF:  Right.

4           THE COURT:  Mr. Quigley, nobody's rights are being

5   disturbed by that arrangement.

6           MR. QUIGLEY:  That's fine with the government, your

7   Honor.

8           THE COURT:  Very good.

9           MS. SHROFF:  Then I think we can just pick another

10  date to come back to the court.  And I am assuming that

11  Mr. Quigley will produce these documents to us in, I don't

12  know, 45 days?

13          THE COURT:  He has told us a moment ago he'll be

14  producing the material in two to three weeks.  Obviously there

15  is a lot to review here.  Although if it is electronic,

16  hopefully you'll be able to use some expedited search

17  techniques.

18          How much time realistically will you need to have made

19  some sense of the case and to be in a position to tell me in

20  particular whether you're moving to suppress anything?

21          MS. SHROFF:  45 days after the production is complete.

22          THE COURT:  All right.  Why don't we do this.  Why

23  don't we choose a time in late July for our next conference.

24          MS. SHROFF:  That's fine.

25          THE COURT:  Mr. Smallman.

G693ALIC

1            THE DEPUTY CLERK:  Wednesday, July 27 at noon.

2            THE COURT:  Wednesday, July 27 at noon?

3            MS. SHROFF:  July 27 it is.

4            THE COURT:  Is that okay for everyone?

5            MR. QUIGLEY:  Yes, your Honor.

6            THE COURT:  Is there an application for the exclusion

7    of time?

8            MR. QUIGLEY:  Yes, your Honor.  The government moves

9    to exclude time between now and July 27, to allow the defendant

10   time to review the discovery that's been produced, to allow

11   continuity of counsel, and preparation for trial.

12           THE COURT:  Ms. Shroff, I want to make sure that you

13   understand that pursuant to my usual practice, I will expect

14   you to tell me then whether there is any suppression motion

15   being made.  I'm not asking for other motions, and I understand

16   that if there is late produced discovery that reveals a basis

17   for suppression, you are not foregoing that.  But I do want to

18   make sure if you're going to be moving for suppression based on

19   any of the, for example, searches and seizures that have been

20   disclosed today, you understand that that's the time at which I

21   will be asking you to tell me whether you're so moving.  You

22   don't need your motion due then.  I will be duly respectful of

23   people's August schedules.  But I do need to know then whether

24   there will be such a motion, so I can use that conference to

25   set a rational date for briefing and a rational date for any

G693ALIC

1   hearing that's generated.  Okay, Ms. Shroff?

2               MS. SHROFF:  Yes, your Honor.  I'm familiar with the

3   Court's practice.

4               THE COURT:  I wanted to make sure you understand

5   that's something I would be putting to you on the 27th.

6               MS. SHROFF:  Certainly.

7               MR. QUIGLEY:  Your Honor, if I may, I think just to

8   clarify the timeline here, I think two to three weeks is

9   realistic for the unclassified materials that I described.

10              The classified materials which could conceivably be

11  the basis of CIPA motion practice or other motion practice, we

12  expect to get a decision from people in D.C. in 30 to 45 days.

13              THE COURT:  Let me pause you on that.  I understood

14  that.  To the extent, of course, that you produce material

15  later than on the timetable you anticipated of two to three

16  weeks, it is not realistic to expect Ms. Shroff to commit as to

17  a motion, if she gets new information and she's entitled to act

18  on it and to make a motion after that date.

19              That said, the defendant is in custody.  And I'm not

20  delighted with the prospect of you getting a decision from

21  people in D.C. in, what did you say?  Six weeks?  45 days?

22              Please convey to all concerned that the Court is

23  breathing down your neck and would like them to expedite, given

24  that the defendant is in custody, whatever CIPA decision that

25  needs to be made.

G693ALIC

1          MR. QUIGLEY:  We'll do that.

2          THE COURT:  That's not a court order.  I'm using my

3     bully pulpit.  But for the time being I'm simply conveying I

4     want prompt response.  Whatever CIPA material winds up being

5     called for here, I want it to be produced as fast as humanly

6     possible.

7          MR. QUIGLEY:  Understood, your Honor.

8          THE COURT:  Ms. Shroff, any objection to the exclusion

9     of time?

10          MS. SHROFF:  No.

11          THE COURT:  I'll exclude time between now and July 27,

12     our next conference date, pursuant to Title 18, United States

13     Code, Section 3161(h)(7)(A).  I find that the interests of

14     justice outweigh the interests of the public and the defendant

15     in a speedy trial.

16          The excluded time is important for several reasons.

17     To begin with, and most important, it will allow the defendant

18     to make sense of what sounds like will be a very substantial

19     amount of electronic discovery, and I want to make sure that

20     Ms. Shroff and her client, who has equal access to that

21     discovery, have a real opportunity to review it and determine

22     what its implications are, whether for motions practice, trial

23     preparation or whatnot.

24          Second of all, government counsel has identified a

25     number of searches, albeit, at least domestically, all pursuant

G693ALIC

```
 1    to warrant.  I want Ms. Shroff to be able to have enough time

 2    to make sense of whether there is any legal infirmity with

 3    respect to any of those searches so she can determine whether

 4    there is any motions practice.

 5            Third of all, counsel have disclosed to me the

 6    potential for CIPA-related discovery, that has its own

 7    complexities, and the exclusion of time is designed to enable

 8    the government, albeit moving with more than deliberate speed,

 9    to obtain that material and produce it.

10            Anything further from the government?

11            MR. QUIGLEY:  No, your Honor.

12            THE COURT:  Anything further from the defense?

13            MS. SHROFF:  Your Honor, just on the CIPA issue, there

14    is no delay from the defense part because he has cleared

15    counsel.

16            THE COURT:  Say it again?

17            MS. SHROFF:  He has cleared counsel, so there is no

18    delay on our part.

19            THE COURT:  I'll see you on July 27.  Thank you.

20                                o0o

21

22

23

24

25
```