```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                            16 Cr. 398 (PAE)

SAJMIR ALIMEHMETI,

               Defendant.

------------------------------x
                                        New York, N.Y.
                                        December 9, 2016
                                        3:15 p.m.


Before:

                    HON. PAUL A. ENGELMAYER
                                           District Judge


                         APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
BY:  BRENDAN QUIGLEY
     EMIL BOVE
     GEORGE TURNER
     Assistant United States Attorneys

SABRINA SHROFF
SYLVIE LEVINE
     Attorneys for Defendant

ALSO PRESENT:  JOSEPH LANDERS, F.B.I.
```

1              (Case called)

2              (In open court)

3              MR. QUIGLEY:  Good afternoon, your Honor.  Brendan
4    Quigley, Emil Bove and George Turner for the government.  We
5    are joined by special agent Joe Landers of the F.B.I.

6              THE COURT:  Very good.  Good afternoon to all of you.

7              MS. SHROFF:  Good afternoon, your Honor.  On behalf of
8    Mr. Sajmir Alimehmeti, who is seated to my right, Federal
9    Defenders of New York, by Sabrina Shroff and Sylvie Levine.
10   Also present at our table is Ms. Sutnick.  She is a cleared
11   paralegal who has been assisting us on this case.

12             THE COURT:  All right.  Very good.  Good afternoon to
13   all of you, including you, Mr. Alimehmeti.

14             All right.  In advance of this conference I have
15   received two publicly filed letters from the government.  One
16   of them on December 6 indicated that in conjunction with this
17   conference the government would like the court to hold a
18   classified proceeding pursuant to Section 2 of the Classified
19   Information Procedures Act, to permit the parties and the court
20   to discuss CIPA, scheduling and related issues.

21             Following that, in response to an informational
22   request from the court, the government this morning submitted a
23   letter docketed at docket 25 that elaborates on those statutory
24   procedures.

25             Mr. Quigley, it would be my expectation that the right

1    way to proceed here is to take up as much as we can at the
2    outset of the conference in open court, and then retire to my
3    conference room, the robing room, to take up the CIPA
4    scheduling-related issues, but leave the defense counsel and
5    the defendant in the courtroom such that if those issues for
6    some reason occasion a need to modify the schedule, everyone is
7    still here and we can modify accordingly.  Does that sound like
8    the right sequence to you?
9              MR. QUIGLEY:  Yes, your Honor.  Just to be clear, I
10   mean our expectation with respect to the CIPA conference is
11   that at least cleared defense counsel would be present at that
12   also.
13             THE COURT:  I did not appreciate that.  OK.  Of course
14   that's fine.  But that would not mean of course the defendant.
15             MR. QUIGLEY:  Correct, your Honor.
16             THE COURT:  All right.  And Ms. Shroff, is that your
17   expectation then?  Is that a rational way to sequence the
18   conference?
19             MS. SHROFF:  Your Honor, that was my expectation.  I
20   had conferred with the government and informed them that at the
21   CIPA conference along with me present would be Ms. Hannah
22   Sutnick and Sarah Howard.  Ms. Sutnick is a cleared paralegal,
23   and Ms. Sarah Howard is a cleared Investigator.
24             THE COURT:  And, Mr. Quigley, any objection to that?
25             MR. QUIGLEY:  No, your Honor.

1    THE COURT:  Then, Mr. Quigley, putting aside CIPA
2    issues which we will take up in the conference room, can you
3    update the court on the case.
4    MR. QUIGLEY:  Yes, your Honor.  Discovery has been
5    largely produced for some time.  I think in the last month or
6    so we produced some additional prison calls and things of that
7    nature, but that's all stuff that came into our possession
8    recently, and it's a very limited set of documents.  The rest
9    of the material has been produced since I think late summer.
10   We have been, as we can discuss more, preparing for the issues
11   we will discuss in the conference.
12   THE COURT:  All right.  Is there anything that at a
13   macro level can be publicly said about the nature of the CIPA
14   issues?  Is there anything that can be publicly said?
15   MR. QUIGLEY:  Your Honor, I just think that we would
16   be in a position to discuss a schedule for the filing of those
17   motions.  It may not be an assured schedule, but we could
18   discuss it, and I think we would put on the record at the
19   conclusion of the CIPA conference the schedule for filing of
20   any such motions.
21   THE COURT:  All right.  Have you and Ms. Shroff spoken
22   in advance of today about the impact of the CIPA issues on the
23   schedule of this case?
24   MR. QUIGLEY:  We have not.  We have had some
25   discussions about specific items in the discovery but not about

1    scheduling motions.
2            THE COURT:  All right.  Without getting into any CIPA
3    issues, does the government have a view as to the likely time
4    that it will take to run to completion the CIPA process you
5    have in mind?  I'm just to just think broadly about the
6    schedule for this case.
7            MR. QUIGLEY:  Right.  From our perspective, your
8    Honor, we think a schedule for filing of CIPA motions, both
9    Section 4 by the government and Section 5 by the defense, we
10   would ask at least from our perspective for at least 90 days,
11   just given --
12           THE COURT:   90 days for the initial filing?
13           MR. QUIGLEY:  Correct, your Honor, yes.  As the court
14   is aware -- and this is in our public filing -- from our
15   perspective the Section 4 entails quite a bit of review in
16   Washington.  Typically in this Circuit it's accompanied by a
17   declaration from the Attorney General, and those things,
18   especially with a change in administration and some other
19   factors, may take a little more time.
20           THE COURT:  So, if your schedule were adopted, the
21   initial filing of your Section 4 motion would be due in 90
22   days.  Would you envision the defendant's Section 5 motion
23   being something that can't really be submitted until they are
24   able to take stock of what is produced under Section 4?
25           MR. QUIGLEY:  Well, your Honor, the Section 4 would be

1    filed, we would anticipate ex parte.  They are really two
2    different issues.  The Section 4 is materials that the
3    government is seeking to withhold from discovery.  The Section
4    5 is the materials that the government has already produced
5    that the defense is seeking to declassify.
6              THE COURT:  I see.  In other words, you already
7    produced some classified materials to cleared defense counsel,
8    and so the Section 5 involves any application by the defense to
9    be able to make use of those materials.  The Section 4 issue
10   you're going to raise with me may have no overlap with the
11   Section 5 issues, because if you are proven correct under
12   Section 4 points, none of it would be seen by the defense.
13             MR. QUIGLEY:  That's right, your Honor.
14             THE COURT:  I see.  So your notion anyway way is that
15   as to both of those applications, they wouldn't be filed --
16   neither your Section 4 nor the defense's Section 5 -- for 90
17   days.  Run to completion then the end of the briefing process.
18   I'm trying to figure out how long a pause, if you will, we have
19   in this litigation as a result of the reciprocal CIPA motions.
20             MR. QUIGLEY:  Right.  If there were a Section 5 motion
21   filed, we would ask for I think at least 30 days to respond to
22   that.  Again, without seeing it, it's hard to know how much
23   time we would need, but again there may be discussions that
24   need to be had with people outside the U.S. attorney's office
25   about that.

1     THE COURT:  And presumably -- although I'll hear from
2  Ms. Shroff in a moment -- presumably she may want -- well, your
3  Section 4 motion is ex parte, so it's not as if part of it is
4  redacted and part of it is not.  It's entirely for the court's
5  review only.
6     MR. QUIGLEY:  That's right, your Honor.
7     THE COURT:  OK.  What if any progress can be made on
8  the balance of this case while the considerable period of time
9  runs its course on the CIPA motions?
10     I mean, for example, this may be a better question put
11  to Ms. Shroff, but to the extent there are, for example,
12  suppression motions directed not to CIPA issues but to
13  conventional Fourth or Fifth Amendment government investigative
14  activity here, perhaps that's something that can at least move
15  forward.
16     Have you given any thought to whether there is
17  anything productive that can be happening in this case while
18  the CIPA process runs its course?
19     MR. QUIGLEY:  Yes, your Honor.  There is no reason why
20  the CIPA process and what I will call the traditional criminal
21  briefing process can't run in parallel.
22     You know, as I said, the unclassified discovery has
23  been produced for some time.  I'm not aware of any -- there was
24  no post-arrest statement, and I think all of the criminal
25  searches in this case were conducted pursuant to warrants, so

1    I'm not sure whether there would be a basis for any suppression
2    motion, but I don't see any reason why the two schedules
3    couldn't be set at the same time.
4            THE COURT:  Just because they're pursuant to warrants
5    doesn't mean there can't be a motion; it just creates a
6    different standard, but I guess the theory is there could be a
7    Franks-related issue or something of that nature conceptually.
8            OK.  But in other words, from your point of view, if
9    the defense has in mind a suppression motion directed at
10   evidence that isn't CIPA related, there is no reason that can't
11   be tackled promptly.
12           MR. QUIGLEY:  That's right, your Honor.
13           THE COURT:  OK.  All right.  Anything else you want to
14   bring to my attention before I turn the floor to Ms. Shroff.
15           MR. QUIGLEY:  No, your Honor.
16           THE COURT:  Police Shroff, your perspective?
17           MS. SHROFF:  Your Honor, we concur with the court's
18   assessment that there is no reason for other motion practice to
19   be stayed while the CIPA practice continues on a separate
20   track.
21           THE COURT:  And do you have anything concrete in mind?
22           MS. SHROFF:  Well, I do need a little bit more time to
23   decide whether we want to attack the warrant itself.  We don't
24   have a post-arrest statement that we would be moving to
25   suppression.

1  THE COURT:  And is Mr. Quigley right, there are no
2  warrantless searches?  Putting aside anything that may come up
3  from CIPA, there are no warrantless searches; any searches here
4  are pursuant to warrant?
5  MS. SHROFF:  It appears to be, your Honor.  But there
6  is one matter that I would like to talk about when we have a
7  CIPA proceeding.
8  THE COURT:  Fine.  I'm trying to focus on the
9  non-CIPA.
10  MS. SHROFF:  Right.
11  THE COURT:  And the issue really is is there anything
12  productive that we can do with this case beyond your continued
13  review of discovery and your moving, if there is a basis to
14  move, as against any warranted searches?  Is there anything
15  else that we can do in this case while we wait for the CIPA
16  issues to be litigated?
17  MS. SHROFF:  Your Honor, to be fair, we are actually
18  doing something with the time.  The discovery review with
19  Mr. Alimehmeti is slow, and we have a lot of material to cover.
20  He is incarcerated, so it is taking us more time than it would
21  normally take, so there is use being made of the time.
22  THE COURT:  No, understood.  I meant in terms of the
23  public presentation of the case.
24  MS. SHROFF:  No.
25  THE COURT:  All right.  And how much time do you need

|   |   |
|---|---|
| 1 | to determine whether you intend to move to challenge any of the |
| 2 | warranted searches? |
| 3 | MS. SHROFF: Your Honor, just to determine or to |
| 4 | actually make the motion? |
| 5 | THE COURT: Fair enough, to make the motion. I mean |
| 6 | I'm building in both the time to decide and then a time, if |
| 7 | there is a colorable motion to be made, to brief it. |
| 8 | MS. SHROFF: 30 days. |
| 9 | THE COURT: Look, that tucks well within the long |
| 10 | schedule you apparently are about to set for CIPA, so that's |
| 11 | fine. So 30 days from now is early January? |
| 12 | MS. SHROFF: Yes, your Honor. |
| 13 | THE COURT: Four weeks from today would be January the |
| 14 | 6th. Do you want to make it January the 9th? |
| 15 | MS. SHROFF: Yes, please. |
| 16 | THE COURT: All right. So, January 9 for any non-CIPA |
| 17 | suppression motions. |
| 18 | Mr. Quigley, how much time do you want to respond? |
| 19 | MR. QUIGLEY: Three weeks, Judge? |
| 20 | THE COURT: Yes. So January 30 for any opposition. |
| 21 | Under the circumstances, it's completely conjectural |
| 22 | whether if there is such a motion it would require a factual |
| 23 | hearing or not. So why don't we do this: Ms. Shroff, if you |
| 24 | choose to make such a motion -- and I'm not encouraging or |
| 25 | discouraging it; I'm simply setting a timeframe so we can get |

1    it done with if it's destined to happen -- you should let me
2    know in a cover letter whether or not you see my need for
3    factual testimony or whether the nature of the motion you are
4    making is something that can be, you know, resolved on the
5    papers.
6             MS. SHROFF:  Understood.
7             THE COURT:  And in the event there is such a hearing,
8    let me know what you have in mind, and at least that way we can
9    budget time for such a hearing.
10            MS. SHROFF:  Good.
11            THE COURT:  All right.  Is there anything further that
12   counsel have for me to take up before we retire to the robing
13   room to discuss CIPA issues?  Ms. Shroff?
14            MS. SHROFF:  One matter.  I am aware of the
15   government's letter that was filed this morning.  I mean as the
16   government has said, in some of the cases -- and I'm sure the
17   court is aware -- various defense counsel, including myself,
18   have moved and asked the court to consider that the
19   government's CIPA 4 filing not be ex parte, that it be shared
20   with government counsel, especially since government counsel is
21   in similar shoes as to the United States Attorney's office.
22            THE COURT:  Be shared with defense counsel.
23            MS. SHROFF:  With defense counsel, with cleared
24   defense counsel.
25            THE COURT:  Right.

|   |   |
|---|---|
| 1 | MS. SHROFF: Because otherwise we're moving closer and closer to sort of complete ex parte litigation on a large bulk of material. I concede -- and I do not want to be intellectually dishonest with the court -- that the defense bar has repeatedly lost this motion. |

1    MS. SHROFF: Because otherwise we're moving closer and
2  closer to sort of complete ex parte litigation on a large bulk
3  of material. I concede -- and I do not want to be
4  intellectually dishonest with the court -- that the defense bar
5  has repeatedly lost this motion.
6    THE COURT: Is what you're saying that you are going
7  to want to at least preserve it?
8    MS. SHROFF: I would like to, yes, your Honor.
9    THE COURT: All right. Well, why don't we take that
10  up in the context of the discussion in the robing room. In
11  other words, to the extent that you want to litigate your
12  access, if you will, to the government's Section 4 motion,
13  logically that's a subset, if you will, of the schedule I'm
14  taking up with respect to all of the filings, so let's make
15  sure we include that on our robing room agenda.
16    MS. SHROFF: Very well.
17    THE COURT: Anything else though that we can take up
18  in open court?
19    MS. SHROFF: No, your Honor.
20    THE COURT: All right. Mr. Quigley?
21    MR. QUIGLEY: No, your Honor.
22    THE COURT: Then I will cleared counsel in the robing
23  room.
24    (Continued on next page)
25

1           THE COURT:  We are back on the record in open court.
2           In the robing room, I had an extended discussion with
3  cleared counsel about the proper timetable for SIPA motions
4  reciprocally under Section 4 and Section 5.  Cleared counsel
5  are going to submit an agreed upon order to the court that
6  recites the schedule that I set governing those motions.
7           What can be publicly said is that I set a next
8  conference in this case for March 31, that's a Friday, at
9  9:30 a.m.
10          At that conference, apart from any other business,
11 I will take up the state of play with respect to the SIPA
12 motions.  I suspect that some of that will inevitably wind up
13 back in the conference room.  Perhaps some of it will be
14 capable of being ventilated publicly.  We will see.
15          Is there an application of exclusion of time to
16 Friday, March the 31st?
17          MR. QUIGLEY:  Yes, your Honor.
18          The government seeks to exclude time between now and
19 March 31 to allow the parties to review the discovery that has
20 been produced, to contemplate and file any motions, and to
21 discuss any potential disposition.
22          THE COURT:  Very good.
23          Ms. Shroff, any opposition?
24          MS. SHROFF:  No, your Honor.
25          THE COURT:  I will exclude time between now and

1   March 31 under Title 18, United States Code, Section
2   3161(h)(7)(A).  I find that the ends of justice outweigh the
3   interest of the public and the defense in a speedy trial.
4   There are a host of reasons why that is so, but in brief, the
5   excluded time permits the defense to continue to review
6   voluminous and, to some degree, difficult access discovery.  I
7   am persuaded that the review by defense counsel is pain-staking
8   and the material is large in scale, and the time is important
9   for defense to both master the material and to determine if
10  there are any legal motions that the material to which the
11  defense has access properly triggers.
12          Separately, as will be reflected in the parties'
13  agreed scheduling order, there are motions that both parties
14  anticipate making which are complex legally and potentially
15  factually, and the excluded time is intended to permit the
16  parties to ably reflect upon and brief those motions.
17          Mr. Quigley also identified, of course, the
18  possibility that the time will be used to discuss a potential
19  disposition, as is always the case in pending criminal matters,
20  and that would be an independent, but not necessary, basis for
21  the exclusion of time here.
22          Anything further from the government?
23          MR. QUIGLEY:  No, your Honor.  Thank you.
24          THE COURT:  Anything further from the defense?
25          MS. SHROFF:  No.  Thank you.

GC9SALIC2

1      THE COURT:  I wish you all well.  Have a very happy
2 and well New Year.
3      (Adjourned)