H3n1alic

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4          v.                              16 Cr. 398 (PAE)

5  SAJMIR ALIMEHMETI,

6              Defendant.              Conference

7  ------------------------------x

8                                     New York, N.Y.
                                       March 23, 2017
9                                      1:37 p.m.

10

    Before:
11
                        HON. PAUL A. ENGELMAYER,
12
                                         District Judge
13

14                       APPEARANCES

15  JOON H. KIM
        Acting United States Attorney for the
16      Southern District of New York
    BY:  EMIL J. BOVE III, ESQ.
17      GEORGE D. TURNER, ESQ.
        Assistant United States Attorneys
18
    FEDERAL DEFENDERS OF NEW YORK INC.
19      Attorneys for Defendant
    BY:  SABRINA SHROFF, ESQ.
20      SYLVIE LEVINE, ESQ.

21  ALSO PRESENT:  JOSEPH LANDERS, Special Agent, FBI

22

23

24

25

H3n1alic

1                (Case called)

2                MR. BOVE:  Good afternoon, your Honor.  Emil Bove and

3     George Turner for the government.  And we have here with us

4     Special Agent Joseph Landers from the FBI.

5                THE COURT:  Very good.  Good afternoon to both of you.

6                MS. SHROFF:  Good afternoon, your Honor.  For

7     Mr. Sajmir Alimehmeti, who is standing to my right, Federal

8     Defenders of New York, by Sabrina Shroff and Sylvie Levine.

9                THE COURT:  Very good.  Good afternoon to both of you,

10    and good afternoon to you, Mr. Alimehmeti.

11                THE DEFENDANT:  Good afternoon.

12                THE COURT:  All right.  We're here for a very narrow

13    purpose.  I received a letter dated March 17th from the

14    defense asking for a prompt status conference to address the

15    motion schedule.  Specifically, the motion schedule in the

16    case, which is set at Docket 26 filed on December 13th, in

17    pertinent part gave the defendant until March the 9th to file

18    any notice pursuant to Section 5.  And I guess we extended that

19    by two weeks to the 23rd.  So that deadline would be today.

20    The defense writes, "Given the amount of classified discovery,

21    we may need to provide additional Section 5 notice as we move

22    closer to trial.  During a conference call today the government

23    declined to agree to any further deadline.  We ask to be heard

24    on this issue."  And then there's a separate issue which

25    Ms. Shroff indicated she wanted to raise.  But let's take up

H3n1alic

1    the first issue first.

2         Ms. Shroff, what was missing from the letter was any

3    date that you were proposing the Section 5 notice be moved to.

4    What are you proposing?

5         MS. SHROFF:  So, your Honor, if I could just -- part

6    of my problem is I don't know how to pick a proposed date, and

7    partially my problem is this:  There were substantial seizures

8    from Mr. Alimehmeti's home, okay?  We have been working on --

9    and I have, in case the Court --

10        THE COURT:  Sorry.  Are they the source of classified

11   discovery?

12        MS. SHROFF:  Classified discovery on multiple devices,

13   and that's where I'll leave that, because --

14        THE COURT:  Sorry.  I'm just trying to understand,

15   when you talk about items seized from his home, are you

16   referring to Section 5 material or something else?

17        MS. SHROFF:  Both, in essence, both, okay?  So there

18   is nonSection 5 and Section 5 material.  I'm still trying to

19   figure out what is the overlap between the two, and I'm also

20   trying to figure out exactly what the volume or the breadth of

21   it will be for trial.  Now I'll be the first to admit -- I'm

22   sorry, I apologize -- I am behind the schedule that the Court

23   had set.  Part of it is because I was on a trial and part of it

24   is because I'm just behind.  And I don't want to make an excuse

25   for the Court.  I know the Court spent a substantial amount of

H3n1alic

1    time setting up a schedule, and short of apologizing to you,

2    all I can say is, I messed up.  I apologize.

3            THE COURT:  Look, I appreciate it.  From my point of

4    view, we have a schedule, though, that set a deadline.  If the

5    request is to move a deadline, I'm just trying to understand

6    what the new date is.  That's always more constructive than

7    simply saying, in the abstract, we'd like more time.  So

8    concretely, what do you propose?

9            MS. SHROFF:  So concretely, I was hoping that I could

10   propose 45 days.

11           THE COURT:  So you want to extend the March 23rd

12   deadline for 45 days for you to give Section 5 notice.

13           MS. SHROFF:  Right.  Or the statute does provide,

14   right, the statute provides that CIPA Section 5 notice can be

15   any date that the Court sets but no later than 30 days before

16   trial.  Now there have been instances where the United States

17   has literally given CIPA notice mid trial, in the middle of a

18   trial, they gave us CIPA notice, and Judge Ramos obviously did

19   not hold us to the 30-day-before-trial deadline.

20           THE COURT:  But that's not our situation.

21           MS. SHROFF:  No, it's not, but the only reason I'm

22   bringing it up is because I'm trying to also explain, the point

23   is, as a defense lawyer, sometimes what I think I don't need to

24   give CIPA notice for, as I get closer to trial, I find myself

25   changing my mind and saying, I might want to give CIPA notice

H3n1alic

 1    for.

 2              THE COURT:  Right.  But rather than my resolving a

 3    conjectural scenario, which is that circumstances may change

 4    that leads you to view the case materially differently, that's

 5    not what our issue is here.

 6              MS. SHROFF:  No.

 7              THE COURT:  My job at this point is to set a rational

 8    deadline and to respond to a specific request for an extension,

 9    not to engage with hypotheticals about whether or not changed

10    circumstances might require some exception.

11              MS. SHROFF:  So I feel poorly asking you for 45 more

12    days because I know you set a fairly lenient schedule.

13              THE COURT:  I had thought so, but, look, I appreciate

14    your candor with me.  Part of it is the trial.  When did you

15    get off trial?

16              MS. SHROFF:  I got off trial in January.

17              THE COURT:  How long was the trial?

18              MS. SHROFF:  The trial was approximately I think two

19    and a half to three weeks.  It was a terrorism trial.

20              THE COURT:  Is part of the delay other commitments of

21    yours?  Is it an unexpected volume of classified discovery in

22    this case?  Just can you be more concrete as to --

23              MS. SHROFF:  It was the classified discovery in the

24    case and then candidly, your Honor, for the last two weeks I

25    had a medical issue that also distracted me, but to be

H3n1alic

genuinely honest with the Court, I would still have missed the

deadline, so it's immaterial that I -- I don't want to lie to

you.

          THE COURT:  No, no, no, no, no.  Look, I am flexible

and forgiving.  Stuff happens.  But I also want to just get an

understanding of what is different from what you expected, and

if I'm going to set a revised deadline now -- and I will hear

from the government first -- I want it to be one that is keyed

to the facts and circumstances.  Can you say anything about the

volume?

          MS. SHROFF:  I don't think the government will

disagree with me the volume of discovery is huge, and part of

the problem I'm still having is trying to figure out, right,

whether I got the same discovery twice, and I suppose I could

have just gone to the government and had a more detailed

debriefing, but I think there's substantial overlay so that my

CIPA 5 notice would be more narrow.  But --

          THE COURT:  In other words, you're saying there are

duplicates throughout the discovery?

          MS. SHROFF:  Right.

          THE COURT:  Percentagewise, how much are you through

it?

          MS. SHROFF:  How much am I through it?

          THE COURT:  How much have you gotten through?

          MS. SHROFF:  I would say about more than 50 to

H3n1alic

1    60 percent I'm done.

2            THE COURT:  All right.  Do you have other commitments

3    between now and the next six weeks that necessitate the

4    six-week extension that you're seeking?

5            MS. SHROFF:  I have a trial date before Judge

6    Broderick of May 15th.

7            THE COURT:  Is that going to go?

8            MS. SHROFF:  Seems that way.

9            THE COURT:  All right.

10           MS. SHROFF:  That's the UN bribery case.

11           THE COURT:  But in any event, in the end you're

12   seeking an extension of about six weeks, 45 days, and

13   presumably commensurate extension for the government's

14   response.

15           MS. SHROFF:  Sure.

16           THE COURT:  Okay.  All right.  Mr. Bove?

17           MR. BOVE:  Thank you, your Honor.

18           I'd like to start out by saying that we want to be

19   reasonable, the government wants to be reasonable in this

20   situation with respect to Ms. Shroff professionally and with

21   respect to the defendant in his right to present a defense in

22   his case.  I would like to provide a little bit of context.  I

23   think the Court is aware that because you set the discovery

24   schedule, classified discovery was made in August of 2016, so

25   they've had these materials for approximately seven months at

H3n1alic

1    this point.  We filed our FISA notice in July.

2              THE COURT:  Sorry.  Are we talking about FISA right

3    now or -- I'm not looking at paragraph 2 of her letter, I'm

4    looking at paragraph 1, which is simply the deadline for her --

5              MR. BOVE:  Yes, your Honor.  I'm speaking about the

6    government's production of classified discovery generally --

7              THE COURT:  Right.

8              MR. BOVE:  -- which was made in August.  We do agree

9    that it was substantial.  That being said, we're talking about

10   the Court's schedule, a schedule by the Court that contemplated

11   a substantial amount of time for review, and at this point

12   today, the current deadline where we're at, the defense has had

13   approximately seven months to review that.  The defense has

14   reached out to the government at times to ask questions about

15   the substance on some of the more technical aspects of the

16   classified discovery.  We have promptly met with the defense to

17   respond to those questions, both in writing, where possible,

18   and in person.  We do not object to this 45-day extension

19   that's been requested here, but there are some logistical

20   concerns that we have about further slippage of that deadline

21   and about the effect of this requested extension on other parts

22   of the case.

23             The Section 5 notice, we think, works in tandem for

24   appropriate reasons with the Section 4 litigation that's going

25   on right now.  The Court can glean insights about whether the

H3n1alic

government has met its burden of establishing what is relevant

and helpful by reference to what the defense notices pursuant

to Section 5 and identifying -- because by doing that,

identifying some aspects of their defense, so you get a

concrete picture from the Section 5 notice that helps to

analyze the Section 4 framework.  So we think that --

THE COURT:  Although commonly, I am told that courts,

in connection with Section 4, will often solicit, if you will,

an *ex parte* submission from the defense that outlines the

anticipated lines of potential defense.

MR. BOVE:  That's absolutely right, and that's

obviously happened.  The Court has requested that type of input

from the defense in this case.  The Section 5 notice provides a

different type of data point because it's made with reference

to specific aspects of the classified discovery that the

defense wants to use at trial.  And that is just another set of

information that the Court has to analyze the Section 4

question, and from the government's perspective, that's one of

the positive attributes that we saw in the original schedule

that the Court set.

THE COURT:  And so assuming that I was to grant the

current request to extend the deadline for defense's Section 5

notice for 45 days, what, in your view, would that mean for the

Section 4 process in order to have them logically synched up?

Is there any change?

H3n1alic

1      MR. BOVE:  It would, I would think, slow down the

2   process of engaging with the Court about the defendant's

3   anticipated defenses and the government's responses to any

4   questions the Court would have.

5      THE COURT:  Well, I mean, I guess the question is, to

6   the extent that the ball is in the Court's court, but with

7   respect to Section 4, would you be asking me to defer any

8   aspect of that review or decision making or to proceed ahead

9   while being mindful that, in event of any uncertainty, I may

10  want to wait till I see what the Section 5 submissions look

11  like?

12     MR. BOVE:  We're not seeking to affect the way that

13  you're --

14     THE COURT:  So in other words, there's no reason to

15  modify any Section 4-related deadlines, and indeed, I'm not

16  sure there are any.  I've gotten your respective submissions

17  with respect to the defense's application to see your legal

18  materials with respect to Section 4, I've received the

19  defense's brief, I've seen your brief as well, correct?

20     MR. BOVE:  Yes, your Honor.

21     THE COURT:  So, I mean, is there anything more on

22  Section 4 beyond the ball being in my court?  I'll put it that

23  way.

24     MR. BOVE:  As long as there's not an application to

25  adjourn the March 24th deadline for the defense submission

H3n1alic

1    that the Court ordered, then --

2              THE COURT:  In connection with Section 4.  Right.  I'm

3    not hearing that.

4              MR. BOVE:  Right.  So I just raise the point to say

5    that any further slippages in the Section 5 notice deadline

6    could impact the analysis of the Section 4 motion.

7              THE COURT:  If I have need for recourse to the

8    Section 5 submissions, that's true, but it doesn't follow that

9    I necessarily would.  But look, I understand that ultimately

10   the Section 5 work is going to be a, necessarily, gate we all

11   have to go through before we can get to, for example, putting

12   this down for trial.

13             MR. BOVE:  Correct, your Honor.

14             THE COURT:  And that would be true regardless of the

15   state of Section 4.

16             MR. BOVE:  Yes, your Honor, and that was the second

17   point that I was going to raise is that the notice is obviously

18   the beginning step to any Section 5 proceedings that we're

19   going to have.  Section 5 and Section 6 contemplate some

20   resource-intensive hearings with respect to admissibility of

21   any evidence that's noticed, and so again, I say that to just

22   further the point that we think that this 45-day adjournment

23   request is reasonable in the circumstances that have been

24   described but further slippages, again, will --

25             THE COURT:  And look, ordinarily the defense would be

H3n1alic

1    the one talking about speedy trial concerns prompted by the

2    slippage.  That's the last thing that Ms. Shroff is talking

3    about.  What's the government interest, if you will, that's

4    implicated by, using your terms, further slippage?

5            MR. BOVE:  The public's interest in a speedy trial,

6    Judge.

7            THE COURT:  Okay.  So in other words, I think what

8    you're saying to me is, you're okay with this extension, but

9    let's hold the line at that point.

10           MR. BOVE:  Yes, your Honor.  And certainly the point

11   that Ms. Shroff raised about if there are subsequent

12   disclosures that could give rise to subsequent notices, we

13   understand all of that, of course, but with respect to the

14   material that was produced in August, whatever deadline is

15   going to be set today, from the government's perspective,

16   should be a firm one and should be treated as such so that we

17   can continue with the case.

18           THE COURT:  Ms. Shroff, assuming I give you a deadline

19   approximately along the lines of what you're seeking, you would

20   understand, would you not, that is a firm extension, and

21   barring some real personal calamity, that would be the deadline

22   with respect to the materials that have been provided, unless

23   there's really some significant change in the nature of the

24   case that leads you to reassess earlier decisions with respect

25   to that material, but for all intents and purposes that would

H3n1alic

1    be your deadline?  Do you understand that?

2            MS. SHROFF:  I do, your Honor, and obviously I'm sure

3    the government knows, and the Court knows, it is embarrassing

4    enough to be standing here asking for more time, and I --

5            THE COURT:  Don't be embarrassed.

6            MS. SHROFF:  I am embarrassed.

7            THE COURT:  You've fallen on your sword enough.  I'm

8    just trying to make sure that if I'm accommodating you, I want

9    to make it clear that this is not a well you keep going back

10   to.

11           MS. SHROFF:  That's fine, your Honor.  But I just want

12   to flag something for the Section 5 notice, right?  The

13   Section 5 notice, the Section 5 calls for us to tell the Court,

14   and the government, specifically what classified information we

15   are seeking to declassify.  The notice has to be specific, the

16   notice has to be reviewed by the government.  At times the

17   government has helped out the defense to sort of hone the

18   notice.  And for the most part, given my experience in other

19   cases where I actually did manage to get something

20   declassified, the process was -- I wouldn't call it amicable

21   but, to the extent that we could move it along, everyone tried

22   to move it along the best we could.  So I am aware.  I will

23   certainly meet the deadline, and I think we can move forward.

24           THE COURT:  Okay.  I mean, look, the new deadline will

25   be a firm deadline.

H3n1alic

1             MS. SHROFF:  Fair enough.

2             THE COURT:  Really barring something terribly

3   unforeseen and likely personal in nature, you should expect

4   that the firm deadline would be firm.

5             MS. SHROFF:  Sure.

6             THE COURT:  All right.  Ms. Shroff, before figuring

7   out what that specific date is, you have a second paragraph in

8   your letter.  It's publicly filed so I'll read it aloud.  "At

9   the status conference we seek to also raise the issue of the

10  defendant's motion to," and then maybe there's a word dropped,

11  "regarding the government's use of information derived from

12  searches conducted pursuant to FISA."  What were you trying to

13  get across?

14            MS. SHROFF:  Okay.  Here's what I'm trying to get

15  across.  The government served FISA notice, right?  They served

16  FISA notice way back early on in the case.  It was my

17  anticipation that we would have -- and Mr. Bove in the

18  conference call pointed out that he thought I was completely

19  wrong, and that's fine -- that I thought that we would have a

20  separate FISA motion schedule other than a Rule 12 motion to

21  suppress.  Now technically I understand that it is a motion to

22  suppress.  We should have anticipated the government saying,

23  well, that you should have filed that along with your other

24  nonclassified motions.  My experience has been, with other

25  cases, that there was a separate FISA motion schedule.  So I

H3n1alic

1    was on trial --

2           THE COURT:  What's the theory of suppression here?

3           MS. SHROFF:  The theory of suppression under FISA

4    itself?

5           THE COURT:  Right.

6           MS. SHROFF:  Well, there's a fair amount of case law

7    as to why FISA searches and FISA Surveillance Act-based

8    searches are improper or unconstitutional, especially --

9           THE COURT:  But is your point sort of that at concept

10   level that it's FISA so it's unconstitutional, or is it based

11   on some facts and circumstances specific to this case?

12          MS. SHROFF:  There are some facts and circumstances

13   specific to the case, given the nature of the notice.  I'm

14   happy to talk about this without the government here because --

15   and I can tell the Court who else we consulted with to --

16          THE COURT:  Well, the discussion that we're having

17   about FISA, is there any reason why this can't be in an open

18   discussion from a classified materials perspective in terms of

19   my trying to get a better sense of the motion you apparently

20   have in mind?  Were this other than a classified case, I would

21   be saying to you now, tell me about what suppression motions

22   you have so that I can understand the full texture of them.  So

23   before I ask you that question, is there some reason why

24   classified information prevents you from explaining the motion

25   you have in mind?

H3n1alic

1          MS. SHROFF:  No.

2          THE COURT:  Tell me what motion you have in mind.

3          MS. SHROFF:  So the motion would be a motion to

4     suppress the evidence that they seek to introduce pursuant to

5     what they garnered through the FISA warrant.

6          THE COURT:  Okay.

7          MS. SHROFF:  And in speaking with other people more

8     recently, outside our office, there is a motion that we should

9     have made, given the specific nature of the notice, and we

10    would like the opportunity to make it.

11         THE COURT:  What is the motion you would like to make?

12    I'm sorry.  If you're going to make the motion, the

13    government's going to see it.  This is an entirely

14    retrospective thing.  It's not going to affect the government's

15    behavior now.  Either there is a problem with the receipt of

16    evidence that might compromise its admissibility or require its

17    suppression or not, but there's nothing you can't say in front

18    of the government in terms of previewing a motion that you're

19    seeking permission to make.

20         MS. SHROFF:  It seems that the way that they used FISA

21    to gather information, both computer information and

22    noncomputer information, from a United States citizen and given

23    the nature of the notice, there is a motion for suppression.

24         THE COURT:  Why does your client have standing?

25         MS. SHROFF:  Why does he have standing?

H3n1alic

```
1         THE COURT:  You said to a United States citizen.  It

2    sounds as if the issue here involved receiving information not

3    specifically from your client but the government's receiving it

4    from some, you said, a United States citizen?

5         MS. SHROFF:  From him.  He's a United States citizen.

6         THE COURT:  Oh, I'm sorry.  I'm sorry.  I thought you

7    were --

8         MS. SHROFF:  From my client, comma, who's a United

9    States citizen.

10        THE COURT:  Sorry.  I misunderstood what you were

11   trying to say to me.  And specifically, can you just unpack

12   that.  Look, this is very elusive.  Give me a couple of very

13   clear sentences about what the ostensible violation of law was.

14        MS. SHROFF:  So one of the arguments would be that

15   Mr. Alimehmeti is not a foreign agent, he therefore would not

16   fall squarely within the kind of person or persons whose

17   belongings or whose computer or whose home or whose person is

18   subject to search under the Foreign Intelligence Surveillance

19   Act.

20        THE COURT:  And is that because of facts specific to

21   him or merely the fact that he is a US citizen?  In other

22   words, is it something more specific or is it really, just at a

23   macro level, these procedures you say don't apply to a US

24   citizen?

25        MS. SHROFF:  Well, it's definitely at the macro level,
```

H3n1alic

1    but there is one aspect that we're still talking about, and

2    that's what I -- I guess I could just -- we're still working

3    with an outside expert to see if one portion that applies

4    specifically to Mr. Alimehmeti is a viable motion.  We have had

5    preliminary calls with them, and we're still trying to flesh

6    out that portion of the --

7          THE COURT:  And what is that portion?

8          MS. SHROFF:  That the nature of the notice they gave

9    for the computer, for any computer records, that it's even more

10   intrusive than the norm.  I really haven't fully fleshed it out

11   with --

12         THE COURT:  May I ask you why you're raising this now.

13   The case was brought more than seven months ago.

14         MS. SHROFF:  Because I thought that the Court would

15   set a separate FISA motion schedule.  I don't really -- that

16   was what was in my mind.  That's what's happened in other

17   cases, that's what I've seen in other cases outside of the

18   district, where the FISA motion is separate from the Rule 12

19   motion, and I just thought that somewhere along the way we

20   would offer to set up a FISA motion schedule.  I was on trial.

21   I thought --

22         THE COURT:  I'm sorry.  I think this is the first I've

23   heard that such a motion might be contemplated.  I usually ask

24   at an early conference, are there going to be any suppression

25   motions.  This is the first notice you've given to the Court,

H3n1alic

1    is that correct?

2              MS. SHROFF:  I think so, but I'm just saying, I

3    never -- that in my rubric, I just never thought of the FISA

4    motion as a motion to suppress.  I'm sorry, but --

5              THE COURT:  What else would it be?

6              MS. SHROFF:  I just thought, like in most other cases

7    there's a motion to suppress, there is CIPA litigation, and

8    then there is FISA litigation.  The courts seem to have set

9    three separate deadlines.  I just assumed.  I don't know why I

10   assumed it.  I have no reason why I thought that would be the

11   case.  So that is why, obviously, I called the government and I

12   said, hey, by the way, we need to set a FISA motion schedule,

13   and they were like, what are you talking about?  That was part

14   of your Rule 12.  That was Mr. Bove's response.

15             THE COURT:  Okay.  Mr. Bove, remind me, just because I

16   can't say that the letter that Ms. Shroff submitted to me was

17   clear enough.  The word "suppress," for example, doesn't appear

18   here.  I didn't look back over the transcripts in the case.

19   Have we previously covered at an earlier conference a

20   suppression schedule?  Usually, in an ordinary criminal case

21   that doesn't have the classified overlay of this one, it's

22   usually the case that the first conference I tell defense

23   counsel, by the second conference, to be prepared to tell me of

24   any motions to suppress they have.  Given the unusual nature of

25   the case, it's not a foregone conclusion that I neglected to

H3n1alic

1   say that.  Do you have any recollection of this ground being

2   explicitly covered already in the history of this case?

3              MR. BOVE:  Yes, your Honor.  I think it was covered in

4   the main at the December 9th conference when the Court

5   asked -- when we discussed the schedule for motions and your

6   Honor asked for a proposed order.  We sent a proposed order to

7   make sure that it could be jointly proposed to defense counsel

8   first before sending it to the Court.  In the first --

9              THE COURT:  Right.  No, no.  I guess my question is,

10  specifically, in a garden variety criminal case, at the initial

11  conference I will ask the government if there are any Fourth,

12  Fifth, or Sixth Amendment events, you will outline what they

13  are, and I will then tell the defense, almost invariably at the

14  second conference is the time at which you are to tell me what

15  if any motions you have and then we'll set a schedule.  Given

16  the nature of this case, I don't remember whether I went

17  through that line of questioning because the case in so many

18  other ways is different from the average case, so that's what

19  I'm trying to recapture.

20             MR. BOVE:  I apologize.  I do recall a discussion

21  between you and Mr. Quigley, I believe at the first conference,

22  about the nature of the evidence and what types of evidence

23  could give rise to motions.  I don't, as I stand here, have a

24  specific recollection of the word "suppression" being used and

25  I don't want to overstate that, so I could certainly respond to

H3n1alic

 1    that question later today, your Honor.

 2             THE COURT:  Look, here's the issue.  If I gave an

 3    earlier deadline and it's been missed, that's a very

 4    substantial reason not to permit this.  If, on the other hand,

 5    the ground rules were less than fully clear, while Ms. Shroff

 6    can fairly be criticized for not having included that in the

 7    order with a schedule, the sense of preclusion isn't quite the

 8    same as if the Court had set an affirmative deadline for such

 9    motions and they never came.

10             MR. BOVE:  Your Honor, the government's position is

11    that the Court's December 13th scheduling order sets just

12    such a deadline.  It refers to motions pursuant to 12(b)(3).

13    12(b)(3)(C) lists suppression motions.

14             THE COURT:  Oh, yes.

15             MR. BOVE:  And just to take a step back, your Honor --

16             THE COURT:  Sorry.  One moment.

17             12(b)(3)(C) reads Suppression of Evidence.  So the

18    reference in the December 9th order, Ms. Shroff, clearly did

19    set, in fact, a deadline for just this sort of motion.  I mean,

20    that is, you're moving to suppress.  Maybe you dropped the word

21    "suppress" deliberately as opposed to just grammatically

22    wrongly in your letter to me, but I'm now looking at this and

23    realizing why perhaps the word "suppressed" doesn't show up in

24    your March 17th letter.  You're moving to suppress FISA

25    evidence, correct?

H3n1alic

1          MS. SHROFF:  Yes, your Honor, but I'm saying to you,

2     first of all, I don't think I purposely dropped a word, but I'm

3     explaining to the Court what happened, right?  So here's the

4     thing.  I understand, but I just -- we never thought of a FISA

5     motion, the deadline for a FISA motion, which is far more

6     complicated than any Rule 12 motion would be, I never

7     anticipated -- if the Court had given me the same deadline for

8     that Rule 12 motion as it did for FISA, I would not have been

9     able to meet it.

10          THE COURT:  Let me ask you a question.  If you were

11     moving to suppress the FISA evidence, wouldn't that be squarely

12     covered by Rule 12(b)(3)?  Is there some other rule you'd be

13     moving under?

14          MS. SHROFF:  No, I would not be moving under

15     Rule 12(b)(3).  I would just be moving under FISA, so to speak.

16     My motion would not necessarily reference Rule 12.

17          THE COURT:  But, I mean, it's a motion to suppress.  I

18     mean, a motion to suppress FISA-obtained evidence is a motion

19     to suppress within the meaning of 12(b)(3), correct?

20          MS. SHROFF:  Right.  I understand that.  But I'm

21     saying to you that in the normal course of events, including

22     other cases in which I have drafted and filed FISA motions, I

23     have not done so with a deadline of Rule 12.

24          THE COURT:  Well, are you telling me that there is an

25     order with the specificity of this that gives you a deadline

H3n1alic

1    for a 12(b)(3) motion, meaning a motion, among others, to

2    suppress; are you telling me that in other cases, courts

3    dealing with the language as specific as exists in the

4    December 9th order have construed that language not to

5    include a FISA motion?

6           MS. SHROFF:  I don't think anybody's parsed it out

7    that way.  The way the courts have set up the motion schedule

8    is: the generic Rule 12 motions, the CIPA litigation, and FISA.

9           THE COURT:  But look, Ms. Shroff, with respect, I

10   mean, this is an unusual case.  I gave the parties the

11   opportunity to work together to develop a -- you're shaking

12   your head, but it is true that I gave you, by schedule, an

13   opportunity to propose a joint schedule that accommodated the

14   various motions that would be made here and the various

15   filings, including relating to Section 4 and Section 5.  If you

16   had in mind the possibility of a FISA motion, it would be one

17   thing to have said at that point, and we'd like an extended

18   schedule to do it.  It's quite another to say, we didn't think

19   of it as a motion to suppress and so we decided to sit on our

20   hands and say nothing about the schedule.  I mean, which is it?

21   Did you conceive of the idea of a FISA motion only recently?

22   Isn't that what happened here?

23           MS. SHROFF:  No.

24           THE COURT:  Then let me grill you.  When did you first

25   decide you had a plausible FISA motion to make?

H3n1alic

1                   MS. SHROFF:  Well, your Honor, I was --

2                   THE COURT:  It would be one thing --

3                   MS. SHROFF:  I'm trying to -- just let me -- if I

4      could answer your question.  So I was on trial on Gamal.  I

5      knew that I had a FISA motion in this case.  I mentioned it to

6      others who were helping me work on this case while I was on

7      trial, and then it dropped somewhere.  But here's what I'm

8      saying.

9                   THE COURT:  Look, we entered into this order in

10     December.  I guess it's signed December 13th.  As of

11     December 13th, did you think you had a plausible FISA motion

12     to make?

13                  MS. SHROFF:  Yes.  I thought I had a FISA motion to

14     make.

15                  THE COURT:  So as of December 13th, if you thought

16     you had a plausible FISA motion to make, did you think (A) it

17     was covered by the motion to suppress reference, the reference

18     to 12(b)(3), in the order, or did you think that at some point

19     we would all stumble into setting a schedule?  Why, for

20     heaven's sake, if as of December 13th you thought you had a

21     plausible motion, did you not set a schedule for that motion?

22     The order has some detail and it sets a schedule for a variety

23     of -- please, counsel, do not speak while I'm speaking.

24                  MS. LEVINE:  I'm sorry.

25                  THE COURT:  I'm in the process of telling Ms. Shroff

H3n1alic

1   why she was derelict with the Court in not setting a motion

2   schedule for a motion that she had in mind as of

3   December 13th, which is very damning, and while I'm in the

4   process of engaging with her, you're interrupting her.  Come

5   on.

6          Look, Ms. Shroff, you knew as of December 13th you

7   had this motion scheduled.  This is intended to be an order

8   that deals with 12(b)(3) motions and it also happens to be an

9   order that deals with some of the unique issues that are

10  presented by this case -- i.e., Section 4 and Section 5

11  motions.  If, as of December 13, 2016, you had in mind a

12  potential FISA motion, in what responsible world do you not set

13  a schedule for it, or at least a placeholder?  The only

14  rational conclusion I can draw is that you then intended to

15  file it on the schedule set in this motion and then you forgot.

16  Is that what happened?

17         MS. SHROFF:  No, that's not what happened.

18         THE COURT:  So what did you think would happen?  When

19  would we all get around to dealing with this FISA suppression

20  motion that you had in mind but chose not to, apparently, raise

21  with the government or the Court when the scheduling order was

22  put into place?  What were you thinking?

23         MS. SHROFF:  I'm sorry.  I wasn't -- I just wasn't

24  thinking.  I'm sorry.  I think the Court's correct.  I was just

25  derelict.

H3n1alic

1          THE COURT:  You were.

2          MS. SHROFF:  I was just derelict.  I'm sorry.  And

3     it's fine.  It's my fault.

4          THE COURT:  But, I mean, look, if you're going to fall

5     on your sword, fall on your sword.  Don't --

6          MS. SHROFF:  I'm trying.  I'm trying to explain to the

7     Court what happened is, look, we need to set a FISA schedule.

8     For some reason I don't have a FISA motion scheduled here.  I

9     said it out loud, I said it several times, and then I just,

10    rightly so -- I didn't do anything about it, so you're right.

11    And I'm just trying to be as accepting of my responsibility as

12    possible.  I'm sorry about that.  I did not anticipate that it

13    would fall under Rule 12.  I kept saying the same thing and I

14    never did anything about it.  That's really what happened.

15          THE COURT:  In other words, when this order was

16    entered into on December 13th, you are representing to me

17    that at that point you thought you had a motion that you would

18    eventually be making but you were not setting a schedule for

19    it.  And you were not alerting the Court or the government of

20    the need to set a schedule for it.  Is that about right?

21          MS. SHROFF:  That's about right.

22          THE COURT:  Mr. Bove, when did you first become aware

23    that the defense had in mind a FISA motion to make?

24          MR. BOVE:  During the call that is referenced in the

25    defense's letter.

H3n1alic

1              THE COURT:  Meaning March 17th, which would be last

2      Friday?

3              MR. BOVE:  Yes, your Honor.

4              And if I could also just note, in speaking with

5      Mr. Turner, we do have a recollection, a general recollection

6      of a discussion of suppression motions at the December 9th

7      conference, so to the extent that it came up then, then

8      certainly the thought of the prosecution team was that this

9      12(b)(3) deadline would cover that.

10             THE COURT:  Right.

11             MR. BOVE:  And so that was the government's

12     understanding in December, and then we became aware of the

13     intended motion more recently.

14             THE COURT:  And what's your view then as to what

15     should happen now?

16             MR. BOVE:  Judge, we'd like the opportunity to

17     litigate with the defense whether they can establish good cause

18     for the failure here pursuant to 12(c)(3).  I think the law in

19     this circuit is strong that this is a waivable motion.  We

20     don't, from this office, want to be unreasonable under

21     circumstances like this, but when we're talking about

22     litigating FISA issues, we speak on behalf of a broader swath

23     than the Department of Justice and we're duty bound to defend

24     these issues as best we can.  I think here, based on the

25     admissions today from counsel about the fact that this motion

H3n1alic

was contemplated when the order was set, I don't think they can

establish good cause.  We think it would be more efficient to

litigate that issue first.  If your Honor --

         THE COURT:  In other words, rather than ruling from

the bench now, give Ms. Shroff an opportunity to explain why,

under the relevant legal principles, there is good cause or

justification to excuse the failure to file the suppression

motion, the FISA suppression motion by the suppression motion

deadline.

         MR. BOVE:  I think it would be reasonable to allow an

opportunity for submissions on that.

         THE COURT:  All right.  Ms. Shroff, that sounds right

to me.  In other words, it seems to me that rather than my

addressing right now an issue that was not even really

explained with clarity to me in your letter of a few days ago,

it seems to me that it's fair to give you the opportunity to

explain in writing why you ought to be given an opportunity to

brief the motion, and I think part of that explains, candidly,

what to do about the motion and when and giving me a much more

concrete understanding of what the motion would be.  It may be

that part of the assessment here involves my assessment of the

likelihood of prejudice to the defendant from counsel's missing

the deadline, and part of my assessment of that would then

require me perhaps to be peeking at the merits to understand

what you have in mind.  So it seems to me that the thoughtful

H3n1alic

1    way to handle this is to set a prompt schedule for an exchange

2    of letter memoranda that address whether you should be given

3    leave to file, out of time, this motion.  Why is that not the

4    way to slow this down and sort this out?

5              MS. SHROFF:  Your Honor, could we just have a

6    two-minute *ex parte* appearance so I can explain just one small

7    matter?

8              THE COURT:  No.  Put it in writing.  If there's

9    something you need to say *ex parte* --

10             MS. SHROFF:  I just --

11             THE COURT:  Look, let me be clear.  I don't know what

12   you have in mind.  It may be there's a personal circumstance --

13             MS. SHROFF:  No, no.  I'm sorry.  I don't mean to

14   interrupt.  It's just that if it's our failure, which obviously

15   it is, and rather than engage in the good cause inquiry, surely

16   it's ineffective assistance to Mr. Alimehmeti.

17             THE COURT:  Well, ineffective assistance is a holistic

18   assessment.  It's not on a moment-by-moment evaluation.  So if

19   we're going to have this discussion, I'd like it to be in

20   writing.  If you want to make a submission as to why you ought

21   to be given leave to make this filing out of time, I'm happy to

22   entertain what you have to say, but I'd like to do it in a way

23   where there is a thought-out exchange between you, not where it

24   pops up like this at a conference of this nature, and so that

25   will give you every opportunity to make whatever arguments you

H3n1alic

1    want, including, if you think that there is a sound argument to

2    be made sounding in ineffective assistance and the avoidance

3    thereof.

4              MS. SHROFF:  Your Honor, the government has --

5              THE COURT:  I'm giving you a chance to try to prevail

6    on this.  I'm asking you to do it in writing.  What's wrong

7    with that?  I've been blindsided by this here.  I had no idea

8    where you were going with this other paragraph.  Somehow the

9    word "suppress" doesn't even appear here.  It wasn't really

10   until Mr. Bove got up that it was explained to me that what you

11   were trying to do was to not simply litigate an issue that had

12   been unanticipated but to litigate out of time an issue that

13   was covered by an explicit provision of a scheduling order.

14   One of the things I could very reasonably do would be to give

15   you a one-word answer, which is "No."  I'm not doing that.  I'm

16   giving you an opportunity to persuade me to come up with

17   another outcome, but I'd like to do it in a thoughtful way

18   where you put your reasons in writing, you give me a concrete

19   sense in much more detail of the motion you have in mind, and

20   the government then has an opportunity to respond, and I can

21   make a thoughtful assessment in light of the facts and case

22   law.  What's wrong with that?

23             MS. SHROFF:  There's nothing wrong with that.  That's

24   fine, your Honor.

25             THE COURT:  How long do you want to make a submission

H3n1alic

1    like that?

2              MS. SHROFF:  Your Honor, I just want to be clear that

3    we told the government that we didn't think that the FISA

4    motion fell within the Rule 12 rubric, so we weren't hiding

5    something from the government on the conference call.  And when

6    I stood up here, I explained to the Court that the government

7    considered FISA as part of the Rule 12 and for whatever reason,

8    correct or incorrect, we did not anticipate that the FISA

9    motion would be subsumed in that because in our other cases,

10   the court has set, whether it's correct or incorrect, a

11   separate FISA deadline.

12             THE COURT:  Okay.  Look, and if that were correct,

13   then the troubling feature is that in the context of submitting

14   to me a detailed scheduling order dealing with the range of

15   other pretrial issues covered here, somehow or other a motion

16   you anticipated being made and that you and you alone knew you

17   were going to make -- the government didn't know that in

18   December -- goes unaddressed.  So one way or another there's a

19   lapse here, and I'm giving you the opportunity to explain,

20   notwithstanding it, whether the lapse is missing the motion to

21   suppress deadline, which literally you did, or failing to

22   specify specifically the intended FISA motion in the schedule,

23   which didn't happen.  I'm giving you the opportunity to try to

24   get out from under.  But I just want something in writing.

25   When can you get me a letter memorandum explaining your

H3n1alic

1    position on the issue?

2              MS. SHROFF:  May I have a minute with Ms. Levine?

3              THE COURT:  Yes.

4              Ms. Shroff.

5              MS. SHROFF:  How about ten days, your Honor?

6              THE COURT:  All right.  So today is the 23rd.  So

7    you'll be looking at April the 3rd.

8              MS. SHROFF:  Sure.

9              THE COURT:  That's a Monday.  So April the 3rd for a

10   letter memorandum from the defense.

11             Look, I encourage you as well to do what none of us

12   have done here today, which is to look at the conference from

13   December 9th and see, parsing it, whether there might be some

14   ambiguity or wiggle room that runs to your benefit.  I haven't

15   looked at it and have not had occasion to because nothing in

16   the letter that you submitted to me indicated to me where we

17   were going with this part of the conversation, but I encourage

18   you to look at that.

19             Government, how long do you want to respond to that

20   letter motion?

21             MR. BOVE:  May we have two weeks, your Honor?

22             THE COURT:  April 17th?

23             MR. BOVE:  Yes, please.

24             THE COURT:  Sure.  Yes.

25             All right.  Ms. Shroff, I'm not going to seek a reply

H3n1alic

1    brief.  It's enough.  I think your opening motion and the

2    government's response ought to be enough.  If there's some

3    follow-up that I need after reviewing them, I'll let you know.

4         All right.  So I think that's all I can do on the

5    potential FISA suppression motion today.  So let's then figure

6    out the other modifications that need to get made in light of

7    the extension I'm going to grant of approximately 45 days for

8    the government for the defense's deadline.

9         Mr. Smallman, what's 45 days from now?

10        All right.  Ms. Shroff, your CIPA Section 5 notice is

11   due May 4th.  That will likely get accomplished what you

12   need.  That's six weeks from now.

13             MS. SHROFF:  Yes, that will be fine.

14             THE COURT:  I think I'm giving you what you asked for.

15             MS. SHROFF:  No, no.  That's fine.

16             THE COURT:  And look, let me be clear.  It seems to me

17   that that extension is well justified.  I'm mindful of how hard

18   working Ms. Shroff is and that you had a separate terrorism

19   trial in between, and while it would have been better to have

20   gotten this request sometime earlier than March 17th, it

21   seems to me, under the assembled circumstances, the right thing

22   to do, out of fairness to Mr. Alimehmeti and out of deference

23   to the professional and personal demands on Ms. Shroff's time,

24   is to extend that deadline.  I'm happy to do that.

25        Mr. Bove, what commensurate extension would you then

H3n1alic

1   need?

2            MR. BOVE:  Judge, consistent with the prior schedule,

3   we'd ask for two weeks to respond with any objections regarding

4   the sufficiency of the Section 5 notice, and in that

5   submission, we'll make a request with respect to any further

6   timing that's necessary, either to collaborate with the defense

7   about potential declassifications or in other ways address the

8   Section 5 notice pursuant to CIPA.

9            THE COURT:  Okay.  Very good.

10           Are there any other dates that need to be adjusted?  I

11   don't think so.

12           MR. BOVE:  I think we're on, your Honor, right now for

13   a status conference on March 31st.

14           THE COURT:  I think it's April 14th at 4 p.m.  No?

15           MR. BOVE:  That sounds better.

16           THE COURT:  I think that's what it had been.  Counsel,

17   under the circumstances, is there any rational purpose to have

18   that conference now that this date has been moved?

19           MS. SHROFF:  Well, your Honor, I leave that up to the

20   Court.  It could be that after you read our motion papers and

21   the government's response, you may find that there is no good

22   cause, in which case Mr. Alimehmeti --

23           THE COURT:  But I won't have those briefs in by

24   April 14th.

25           MS. SHROFF:  Okay.  So that's what I'm saying.

H3n1alic

1   Depending on how it will work out and were the Court not to

2   grant this relief, then Mr. Alimehmeti may have a request for

3   new counsel, so if you could set a date.

4          THE COURT:  So in other words, what you're proposing

5   is that I move the next conference from April 14th to a date

6   not too long after April 17th so I can, at a minimum, resolve

7   the issue of whether there will be a FISA suppression motion.

8          MS. SHROFF:  Yes, your Honor.

9          THE COURT:  That sounds right.

10          Mr. Smallman, can I have a conference date a week or

11   more after April 17th.

12          Counsel, how is May 3rd at 4 p.m.?  I have a civil

13   trial that will be occupying my days during the week

14   immediately after the 17th.

15          MR. BOVE:  We'll be here, Judge.  Thank you.

16          THE COURT:  Ms. Shroff?  May 3rd at 4 p.m.?

17          MS. SHROFF:  May I just have one second?

18          THE COURT:  Yes, of course.

19          MS. SHROFF:  I'm sorry, your Honor.  I actually think

20   I have another matter at 4, before -- it's United States v.

21   Amir.  I can't remember the judge, but I have another matter.

22   I could do 3.

23          THE COURT:  All right.  I've got a civil trial on

24   April 24th, but I do want to not put this off too far.  Let's

25   just do it April 24th at 5 p.m.  It's not ideal, but it

H3n1alic

1    assures that we will meet again soon.  Does that work?

2                MS. SHROFF:  Yes, your Honor, and if Mr. Amir's case

3    is moved, I will be happy to contact the case so you can move

4    it back.

5                THE COURT:  For the time being let's just do it

6    April 24th.

7                I think time needs to be excluded then up to

8    April 24th.  Is there a motion to that effect?

9                MR. BOVE:  Yes, your Honor.  The government will ask

10   that time be excluded until April 24th in the interests of

11   justice in order for the defendant to contemplate and file any

12   motions in the litigation we discussed today, as well as to

13   continue to produce discovery.

14               THE COURT:  Ms. Shroff?

15               MS. SHROFF:  That's fine.

16               THE COURT:  I'm going to exclude time between now and

17   April the 24th pursuant to Title 18 United States Code

18   Section 3161(h)(7)(A).  There are a host of reasons for this.

19   The defense continues to review an apparently voluminous amount

20   of Section 5 material and will be readying notice regarding

21   that.  The extra time is intended to allow Ms. Shroff the

22   opportunity to review that material.  Separately, we now have a

23   separate issue relating to a potential FISA suppression motion,

24   which needs to be briefed -- that is, whether or not to permit

25   the motion.  And I need to get the government's response, and I

H3n1alic

```
 1    will be reflecting on that.  I likely will be in a position to
 2    rule on that issue on April 24th.  So the time excluded is
 3    also intended to accomplish that.
 4              Anything further from the government?
 5              MR. BOVE:  No, your Honor.  Thank you.
 6              THE COURT:  Anything further from the defense?
 7              MS. SHROFF:  Your Honor, I'm assuming that the date
 8    tomorrow remains in place.
 9              THE COURT:  The what?
10              MS. SHROFF:  The date tomorrow remains in place.
11              THE COURT:  The date tomorrow?  What are you referring
12    to, Ms. Shroff?
13              MS. SHROFF:  The ex parte, did you want us to --
14              THE COURT:  Yes.  The date for your Section 4
15    submission to me, correct?  That's the letter you're going to
16    submit?  I'm trying to understand what you're asking.
17              MS. SHROFF:  Yes, the ex parte letter.
18              THE COURT:  Right.  That is unchanged.
19              MS. SHROFF:  Okay.  That's all I wanted to know.
20    Thank you.
21              THE COURT:  Okay.  Thank you.  We stand adjourned.
22              THE DEPUTY CLERK:  All rise.
23                            o0o
24              THE COURT:  Back on the record.  I'm going to ask that
25    by the end of the day tomorrow, the government submit a draft
```

H3n1alic

1    order that memorializes the modified schedule that we've set

2    here.  I'll ask you to run it by Ms. Shroff first to make sure

3    that it's accurate, but I want to get an accurate scheduling

4    order on the record and I'd like the parties to review it and

5    submit it to me.

6              MR. BOVE:  Yes, your Honor.

7              MS. SHROFF:  Your Honor, may I just ask the Court, in

8    other cases we've had an actual *ex parte* meeting about the

9    defense theory.

10             THE COURT:  I want to see your letter first and I'll

11   see if a meeting is warranted.

12             MS. SHROFF:  I just want to be clear.

13             THE COURT:  I'm not ruling out an *ex parte* meeting at

14   all, but I'd like to read the letter first.

15             MS. SHROFF:  Okay.

16             THE COURT:  Thank you.

17             (Adjourned)

18

19

20

21

22

23

24

25