UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA             :

     -against-                              :        16 Cr. 398 (PAE)

SAJMIR ALIMEHMETI,                   :

          Defendant.                 :

-----------------------------------------------------------x


MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO
SUPPRESS, AND FOR A *FRANKS* HEARING AND DISCLOSURE OF FISA
<u>ORDERS, APPLICATIONS, AND RELATED MATERIALS</u>


Federal Defenders of New York
Attorneys for Sajmir Alimehmeti
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (212) 417-8700

Sabrina P. Shroff
Sylvie Levine
Noelle E. Lyle
*Of Counsel*

TO:  Joon H. Kim
      Acting United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, New York 10007
      Attn.: Emil J. Bove, III
          George D. Turner
          Assistant United States Attorneys

# Table of Contents

I. Preliminary Statement ................................................................................. 1

II. Background ................................................................................................. 2

   a. Mr. Alimehmeti ..................................................................................... 2

   b. FISA's Framework ............................................................................... 3

III. Argument ................................................................................................. 6

   a. There Was No Probable Cause to Find that Mr. Alimehmeti Was an Agent of a Foreign Power ................................................................................. 6

      i. FISA Probable Cause Determinations Should Be Reviewed *de novo* ............. 6

      ii. There Is No Evidence that Mr. Alimehmeti Acted "for or on behalf of" a Foreign Power .............................................................................. 7

   b. The Required Certifications May Be Deficient ..................................... 11

      i. Collection of Foreign Intelligence Information Must Be a "Significant Purpose" of the FISA Surveillance and Searches ..................................... 11

      ii. Normal Investigative Techniques Must Be Insufficient ............................. 13

   c. The Timing of Surveillance or Searches May Have Been Improper .............. 13

   d. The Required Minimization Procedures May Have Been Inadequate or Not Followed .............................................................................................. 14

   e. The FISA Applications May Have Included Intentional or Reckless Material Falsehoods or Omissions .......................................................................... 16

   f. The Court Should Order Disclosure of the FISA Applications, Orders, and Related Materials ................................................................................. 18

IV. Conclusion ............................................................................................... 22

# Table of Authorities

## Cases

*Brady v. Maryland*, 373 U.S. 83 (1963) ................................................................. 21

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) ............................................................ 10

*Franks v. Delaware*, 438 U.S. 154 (1978) .............................................................. 16

*Hess v. Indiana*, 414 U.S. 105 (1973) ................................................................... 10

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ......................................... 10

*In re All Matters Submitted to Foreign Intelligence Surveillance Court*, 218 F. Supp. 2d 611 (Foreign Intel. Surv. Ct. 2002) ................................................................. 17

*In re Kevork*, 788 F.2d 566 (9th Cir. 1986) ............................................................. 3

*In re Reauthorization Certifications and Related Procedures* (Foreign Intel. Surv. Ct., April 26, 2017) ................................................................................................. 16, 17

*Sanchez-Llamas v. Oregon*, 548 U.S. 331 (2006) .................................................... 20

*Snyder v. Phelps*, 562 U.S. 443 (2011) ................................................................. 10

*United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004) ........................................ 21

*United States v. Abu-Jihaad*, 630 F.3d 102 (2d Cir. 2010) ................................. 6, 7, 12

*United States v. Alwan*, 2012 WL 399154 (W.D. Ky. Feb. 7, 2012) ............................ 6

*United States v. Awadallah*, 349 F.3d 42 (2d Cir. 2003) .......................................... 16

*United States v. Aziz*, 2017 WL 118253 (M.D. Pa. Jan. 12, 2017) ......................... 6, 7, 18

*United States v. Belfield*, 692 F.2d 141 (D.C. Cir. 1982) .......................................... 19

*United States v. Cromitie*, 727 F.3d 194 (2d Cir. 2013) ........................................................ 21

*United States v. Daoud*, 755 F.3d 479 (7th Cir. 2014) ........................................................ 18

*United States v. Elshiaway*, 2017 WL 1048210 (D. Md. Mar. 20, 2017) ................4, 15, 21

*United States v. Gamez-Orduno*, 235 F.3d 453 (9th Cir. 2000) .................................... 20

*United States v. Gowadia*, 2009 WL 1649709 (D. Haw. June 8, 2009) .............................. 6

*United States v. Hasbajrami*, 2016 WL 1029500 (E.D.N.Y. Mar. 8, 2016) ......................... 3

*United States v. Hassan*, 742 F.3d 104 (4th Cir. 2014) ........................................................ 6

*United States v. Huang*, 15 F.Supp.3d 1131 (D.N.M. 2014) .................................................. 6

*United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993) .................................... 20

*United States v. Turner*, 840 F.3d 336 (7th Cir. 2016) ........................................................ 6

*United States v. Warsame*, 547 F.Supp.2d 982 (D. Minn. 2008) ......................................... 6

*United States v. Wright*, 2016 WL 7469712, —— F.Supp.3d —— (D. Mass. 2016) .......... 6

**Statutes**

50 U.S.C. §§ 1801-1812 and §§ 1821-1829.................................................................passim

Intelligence Reform and Terrorism Prevention Act, Pub. L. 108-458 ............................ 8

**Other Authorities**

DOJ Office of the Inspector General, Report to Congress on Implementation of
     Section 1001 of the USA PATRIOT Act (March 8, 2006)......................................... 14

Elizabeth B. Bazan, CONG. RESEARCH SERV., RS2201, INTELLIGENCE REFORM AND
     TERRORISM PREVENTION ACT OF 2004: "LONE WOLF" AMENDMENT TO THE
     FOREIGN INTELLIGENCE SURVEILLANCE ACT (Dec. 29, 2004).................................. 9

Report to Congress on Implementation of Section 1001 of the USA PATRIOT Act
(March 8, 2006) ........................................................................................................... 17

S. Rep. No. 95-604 ................................................................................................3, 15, 19

S. Rep. No. 95-701 ...................................................................................................10, 19

## I.   Preliminary Statement

In an application for a Foreign Intelligence Surveillance Act ("FISA") order, the Government must demonstrate, among other things, probable cause to believe that the United States person (here, a United States citizen) targeted is an "agent of a foreign power."  50 U.S.C. §§ 1804(a)(3); 1805(a)(2); 1823(a)(3); 1824(a)(2).  As relevant here, that means someone acting "for or on behalf of" the Islamic State of Iraq and the Levant ("ISIL"), or someone helping another person to do so.  *Id.* §§ 1801(b)(2); 1821(1).

The Government alleges that Mr. Alimehmeti acted for or on behalf of undercover agents posing as ISIL supporters.  However, we have seen no evidence that he acted for or on behalf of ISIL or of anyone with an actual connection to ISIL. For this and other reasons, Mr. Alimehmeti moves to suppress all evidence obtained or derived pursuant to FISA.  In the alternative, he moves for a *Franks* hearing and for disclosure of the Government's FISA applications, the resulting orders, and related materials – including information about which evidence is obtained or derived from FISA surveillance – as required to accurately determine the legality of the FISA surveillance and searches, and as required by due process.  *Id.* §§ 1806(f)-(g); 1825(g)-(h).

## II.    Background

### a.  Mr. Alimehmeti

Sajmir Alimehmeti is a 23 year-old United States citizen.  He was born in Albania, immigrated to the United States when he was a child, and settled with his family in the Bronx.  He is charged with one count of providing material support to ISIL and one count of making a false statement on a passport application.  In brief, the Government alleges that Mr. Alimehmeti expressed support for ISIL, that he purchased knives and military-type gloves and equipment, and that he provided support to an undercover law enforcement agent posing as a prospective ISIL recruit about to travel to Syria.  This support consisted of discussing secure messaging apps with the agent, and accompanying the agent and offering suggestions while the agent purchased items such as a cell phone, a compass, and boots.  The Government also alleges that Mr. Alimehmeti falsely stated on a passport application that his previous U.S. passport had been lost.  It alleges that he wanted a new passport because his old one contained rejection stamps from two 2014 attempted entries into the United Kingdom, and he was afraid those stamps would hinder future travel.

On July 21, 2016, the Government filed notice that it intends to offer into evidence, or otherwise use in this case, "information obtained and derived from electronic surveillance and physical searches conducted pursuant to the Foreign Intelligence Surveillance Act of 1978 ('FISA'), as amended, 50 U.S.C. §§ 1801-1813

and §§ 1821-1829." ECF No. 14. Materials obtained via FISA are not marked as such. In an effort to make a more targeted motion to the Court, defense counsel asked the Government to specify the FISA materials. The Government informed us that "[t]he materials referenced in the FISA notice were produced in discovery in July and August 2016." Although that appears to be a responsive answer, it is not. Almost all of the voluminous discovery in this case was produced in July and August 2016. The Government has not informed us of any other details, such as when the Government's use of FISA surveillance and searches began, and what discovery was obtained or derived from FISA.

### b. FISA's Framework

FISA was enacted to address federal domestic surveillance abuses that came to light during the 1960s and 70s, including surveillance, ostensibly for national security purposes, of Dr. Martin Luther King Jr., Vietnam War protestors, and other groups labeled "subversive." *See United States v. Hasbajrami*, No. 11-CR-623, 2016 WL 1029500, at *1 (E.D.N.Y. Mar. 8, 2016). FISA was meant to balance civil liberties against the need for the federal government to gather intelligence on foreign governments and their agents. *See In re Kevork*, 788 F.2d 566, 569 (9th Cir. 1986) (citing S. Rep. No. 95-604). To maintain this balance, it created the United States Foreign Intelligence Surveillance Court ("FISC"), composed of eleven Federal District Judges, and set in place a procedure by which the executive branch could seek an *ex parte*

3

order from the FISC authorizing the use of physical searches and electronic surveillance within the United States. *See United States v. Elshiaway*, No. 16-CR-0009, 2017 WL 1048210, at *3 (D. Md. Mar. 20, 2017).

To obtain an order from the FISC allowing surveillance or a physical search, the Government must comply with several requirements. As relevant here, and explained in more detail below, it must:

(1) Demonstrate probable cause to believe that the target of the search is the "agent of a foreign power", and that the premises to be searched or facility to be surveilled is, or is about to be, owned or used by an agent of a foreign power. 50 U.S.C. §§ 1804(a)(3); 1805(a)(2); 1823(a)(3); 1824(a)(2).

(2) Certify, among other things, that "a significant purpose of the [surveillance/search] is to obtain foreign intelligence information" and that "such information cannot reasonably be obtained by normal investigative techniques." *Id.* §§ 1804(a)(6)(B)-(C); 1823(a)(6)(B)-(C).

(3) State minimization procedures that the FISC finds are designed to minimize the "acquisition and retention, and prohibit the dissemination, of nonpublicly available information concerning unconsenting United States persons." *Id.* §§ 1801(h); 1804(a)(4); 1821(4); 1823(a)(4).

(4) Return to the FISC to seek extensions of electronic surveillance or physical searches if the time period set out in the FISC's original order have passed. *Id.* §§ 1805(d); 1824(d).

If the Government intends to use information obtained or derived pursuant to a FISA order in a court case, it must give notice to the "aggrieved person" – that is, the target of the surveillance/search or any other person whose communications or activity were subject to the surveillance/search. *Id.* §§ 1801(k); 1806(c); 1821(2);

4

1825(d).  That person can then make a motion to suppress "on the grounds that . . . the information was unlawfully acquired; or . . . that the [surveillance/physical search] was not made in conformity with an order of authorization or approval."  *Id.* §§ 1806(e); 1825(f).  After such a motion is made, the Attorney General may then file an affidavit under oath saying that disclosure or an adversary hearing would harm the national security of the United States.  The district court where the motion is pending then reviews "in camera and ex parte the application, order, and such other materials relating to the [surveillance/physical search] as may be necessary to determine whether the [surveillance/physical search] of the aggrieved person was lawfully authorized and conducted."  *Id.* §§ 1806(f); 1825(g).

When making this determination "the court may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the physical search, or may require the Attorney General to provide to the aggrieved person a summary of such materials, only where such disclosure is necessary to make an accurate determination of the legality of the [surveillance/physical search]."  *Id.*  Even if the court determines that the surveillance or search was lawful, it may order discovery or disclosure "to the extent that due process requires."  *Id.* §§ 1806(g); 1825(h).

5

## III.   Argument

### a.   There Was No Probable Cause to Find that Mr. Alimehmeti Was an Agent of a Foreign Power

#### i.   FISA Probable Cause Determinations Should Be Reviewed _de novo_

In the Second Circuit, "FISA warrant applications are subject to 'minimal scrutiny by the courts.'" _United States v. Abu-Jihaad_, 630 F.3d 102, 130 (2d Cir. 2010) (quoting _United States v. Duggan_, 743 F.2d 59, 77 (2d Cir. 1984)).  The Fourth Circuit, however, holds that _de novo_ review of FISA probable cause determinations is proper. _United States v. Hassan_, 742 F.3d 104, 138–39 (4th Cir. 2014).  The vast majority of district courts outside the Second Circuit have followed the Fourth Circuit and found _de novo_ review to be the proper standard.[1]  As set out in _United States v. Aziz_, No. 15-CR-309, 2017 WL 118253 (M.D. Pa. Jan. 12, 2017), "the Second Circuit's decision in _Abu-Jihaad_ appears to be based on a misreading of a prior opinion, _United States v. Duggan_, where the court observed that FISA _certifications_ are reviewed – both by the FISC and district courts – with 'minimal scrutiny.'"  _Id._ at *8 n. 7 (emphasis in

---

[1] _See, e.g._, _United States v. Wright_, No. 15-CR-10153, 2016 WL 7469712, at *1, —— F.Supp.3d —— (D. Mass. 2016) (acknowledging Second Circuit precedent, but finding that "[t]he reasoning for applying a more stringent standard is persuasive, 'especially given that the review [of a FISA warrant application] is ex parte and thus unaided by the adversarial process.') (quoting _United States v. Rosen_, 447 F.Supp.2d 538, 545 (E.D. Va. 2006)); _United States v. Huang_, 15 F.Supp.3d 1131, 1138 (D.N.M. 2014); _United States v. Alwan_, No. 11-CR-13, 2012 WL 399154, at *8 (W.D. Ky. Feb. 7, 2012); _United States v. Gowadia_, No. 05-CR-486, 2009 WL 1609709, at *4 (D. Haw. June 8, 2009); _United States v. Warsame_, 547 F.Supp.2d 982, 990 (D. Minn. 2008) ("Because the FISA review is _ex parte_, the Court rejects the prosecution's contention that the FISC's probable cause determinations are entitled to 'substantial deference.'"); _see also United States v. Turner_, 840 F.3d 336, 340 (7th Cir. 2016).

original).  FISA's "statutory scheme requires the defendant and his counsel to place their trust singularly in the reviewing court.  If the Fourth Amendment is to retain meaning under such circumstances, it demands – at minimum – *de novo* review."  *Id.* While we recognize that this Court is bound by Second Circuit precedent, we preserve for potential further review a challenge to the Second Circuit's anemic standard of review.

### ii. There Is No Evidence that Mr. Alimehmeti Acted "for or on behalf of" a Foreign Power

FISA allows physical searches and surveillance only if there is probable cause to believe that "the target of the [surveillance/physical search] is a foreign power or an agent of a foreign power." 50 U.S.C. §§ 1805(a)(2); 1824(a)(2).  It also requires probable cause to believe that the premises to be searched or facility to be surveilled is, or is about to be, owned or used by an agent of a foreign power.  *Id.*  "Foreign power" is defined to include foreign governments, organizations or entities controlled by foreign governments, or groups engaged in international terrorism.  *Id.* §§ 1801(a); 1821(1).  ISIL, for example, is a foreign power.  Mr. Alimehmeti is clearly not.  Nor are the law enforcement agents who interacted with him.

Nor is Mr. Alimehmeti an agent of a foreign power.  That term is defined in 50 U.S.C. § 1801(b).[2]  For a U.S. citizen to be an agent of a foreign power, he must act

---

[2] "Agent of a foreign power" is "any person who—

"for or on behalf of" a foreign power, or must have knowingly aided, abetted, or

conspired with someone acting for or on behalf of a foreign power.  The Government

alleges in its complaint that Mr. Alimehmeti acted for or on behalf of undercover

agents *posing* as ISIL sympathizers, but there is no evidence that he acted for or on

behalf of ISIL or any of its actual operatives.

Under FISA, Mr. Alimehmeti cannot have been an agent of an organization

that he never did anything for, and that never benefited from any of his actions.  This

is clear not only from the plain meaning of the phrase "for or on behalf of", but also

from the history of FISA.  In 2004, FISA was broadened by Section 6001 of the

Intelligence Reform and Terrorism Prevention Act, Pub. L. 108-458.  That Act added

a "lone wolf" provision to FISA, expanding the definition of "agent of a foreign

power" to include *non*-U.S. persons who engaged in or prepared for acts of

---

(A) knowingly engages in clandestine intelligence gathering activities for or on behalf of a foreign power, which activities involve or may involve a violation of the criminal statutes of the United States;
(B) pursuant to the direction of an intelligence service or network of a foreign power, knowingly engages in any other clandestine intelligence activities for or on behalf of such foreign power, which activities involve or are about to involve a violation of the criminal statutes of the United States;
(C) knowingly engages in sabotage or international terrorism, or activities that are in preparation therefor, for or on behalf of a foreign power;
(D) knowingly enters the United States under a false or fraudulent identity for or on behalf of a foreign power or, while in the United States, knowingly assumes a false or fraudulent identity for or on behalf of a foreign power; or
(E) knowingly aids or abets any person in the conduct of activities described in subparagraph (A), (B), or (C) or knowingly conspires with any person to engage in activities described in subparagraph (A), (B), or (C)."  50 U.S.C. §1801(b)(1) includes further definitions for agents of a foreign power who are *not* United States persons.  Mr. Alimehmeti, as a citizen of the United States, is a United States person.  50 U.S.C. §1801(i).

international terrorism, even if acting without connection to any terrorist organization. 50 U.S.C. § 1801(b)(1)(C); *see also* Elizabeth B. Bazan, Cong. Research Serv., RS2201, Intelligence Reform and Terrorism Prevention Act of 2004: "Lone Wolf" Amendment to the Foreign Intelligence Surveillance Act (Dec. 29, 2004), *available at* https://fas.org/irp/crs/RS22011.pdf.  But FISA does not and never has encompassed a "lone wolf" U.S. person.  If Mr. Alimehmeti were acting on his own or at the behest of law enforcement agents posing as ISIL operatives or sympathizers, there was no probable cause to believe he was an agent of a foreign power.

The Government may allege that Mr. Alimehmeti was an agent of ISIL not because of his actions but because he spoke to persons he believed were ISIL operatives or sympathizers or expressed support for ISIL.  But FISA does not allow a U.S. citizen to be deemed an agent of ISIL on the basis of activities protected by the First Amendment.  50 U.S.C. §§ 1805(a)(2)(A); 1824(a)(2)(A).  The Government alleges in its complaint that Mr. Alimehmeti had in his possession an ISIL flag and images of ISIL flags, had videos of people who appear to be ISIL fighters engaging in terrible acts of violence, and had audio files about jihad.  These alleged activities may be anathema and deeply disturbing, but they are protected political speech and expression, dealing with matters of public concern.  They are therefore "at the heart of the First Amendment's protection," occupying "the highest rung of the hierarchy

of First Amendment values, and . . . entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011) (quotation marks and citations omitted); *c.f. Holder v. Humanitarian Law Project*, 561 U.S. 1, 25 (2010) (noting that plaintiffs challenging 18 U.S.C. § 2339B – the material support for terrorism statute that Mr. Alimehmeti is charged with violating – "may say anything they wish on any topic" and "may speak and write freely about [designated terrorist organizations].").

Mere speech in support of jihad or ISIL – even if that speech advocated violence – could not form the basis for a probable cause determination here. "[T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969); *Hess v. Indiana*, 414 U.S. 105, 108 (1973) (The First Amendment protects "advocacy of illegal action at some indefinite future time"). The legislative history of FISA also makes clear that the statute was not intended to allow searches and surveillance based only on "pure advocacy of the commission of terrorist acts." S. Rep. No. 95-701 at 28. Such advocacy is protected by the First Amendment and "would not, in and of itself, be sufficient to establish probable cause that an individual may be preparing for the commission of such acts." *Id.*

10

The Court should review the FISA affidavits.  If they do not support probable cause to believe that Mr. Alimehmeti acted for or on behalf of ISIL, or those actually aiding, abetting, or conspiring with it, or if the Court determines that probable cause was lacking for any other reason, it should suppress all evidence derived from FISA surveillance and searches.

### b.  The Required Certifications May Be Deficient

FISA requires a designated high-level executive branch official to make several certifications in a FISA application.  50 U.S.C. §§ 1804(a)(6); 1823(a)(6).  We ask that the Court review these certifications to ensure that they were not clearly erroneous. *Id.* §§ 1805(a)(4); 1824(a)(4).  If they were clearly erroneous, the evidence resulting from the FISA orders should be suppressed.

### i.  Collection of Foreign Intelligence Information Must Be a "Significant Purpose" of the FISA Surveillance and Searches

In particular, the executive branch official must certify that he "deems the information sought to be foreign intelligence information" that "a significant purpose of the [search/surveillance] is to obtain foreign intelligence information." *Id.* §§ 1804(a)(6)(A)-(B); 1823(a)(6)(A)-(B).  An application for a physical search must also contain a statement of facts and circumstances justifying the belief that "the premises or property to be searched contains foreign intelligence information."  *Id.* § 1823(a)(3)(B).

11

Foreign intelligence information, as applicable here, means information that is "necessary to . . . the ability of the United States to protect against" a number of threats, including potential attacks of a foreign power, sabotage, international terrorism, or the proliferation of weapons of mass destruction by a foreign power, or clandestine intelligence activity by an intelligence service of a foreign power. *Id.* § 1801(e)(1). It also includes information "with respect to a foreign power or foreign territory that . . . is necessary to . . . the national defense or security of the United States." *Id.* § 1801(e)(2).

First, because Mr. Alimehmeti acted only at the behest of undercover agents, it simply cannot be that a "significant purpose" of the FISA surveillance and searches sought here was the gathering of foreign intelligence information. Foreign intelligence information is, by definition, tied to the actions or potential actions of a foreign power. Second, the Government must "have a measurable foreign intelligence purpose, other than just criminal prosecution of even foreign intelligence crimes" when it seeks a FISA order. *Abu-Jihaad*, 630 F.3d at 128 ("Indeed, the FISA Review Court has ruled that the significant purpose requirement specifically 'excludes from the purpose of gaining foreign intelligence information a sole objective of criminal prosecution,' even for foreign intelligence crimes.") (quoting *In re Sealed Case*, 310 F.3d 717, 735 (Foreign Int. Surv. Ct. Rev. 2002)). Therefore, if the sole purpose

12

of obtaining FISA orders was to gather evidence that Mr. Alimehmeti specifically committed crimes, the certifications in the FISA applications were clearly erroneous.

ii.  Normal Investigative Techniques Must Be Insufficient

A designated executive branch official must also certify that the information sought under the FISA application "cannot reasonably be obtained by normal investigative techniques." 50 U.S.C. §§ 1804(a)(6)(C); 1823(a)(6)(C).  Here, for example, in addition to the utilization of undercover agents, the Government obtained warrants for searches, pen registers, trap-and-trace devices, and location information.  The warrants were issued regarding Mr. Alimehmeti's home, cell phone, and other electronic devices, as well as information from Facebook, Gmail, Twitter, Instagram and other companies.  The Government also obtained information from other law enforcement agencies, including those in the United Kingdom.  The availability of such "normal" techniques could reasonably have enabled the Government to obtain the relevant information it sought.

c.  The Timing of Surveillance or Searches May Have Been Improper

Under 50 U.S.C. §§ 1805(d) and 1824(d), FISA orders cover surveillance and searches only for a limited period of time.  The Government must return to the FISC for an extension.  *Id.*  We ask that the court review all FISA orders to ensure that surveillance and searches were not done out of time, as the DOJ has previously reported non-compliance with FISA date restrictions.  *See* DOJ Office of the

13

Inspector General, Report to Congress on Implementation of Section 1001 of the

USA PATRIOT Act (March 8, 2006), *available at*

https://oig.justice.gov/special/s0603/index.htm ("[P]ossible violations generally

related to 'over-collection' and 'overruns.' . . . An 'overrun' refers to investigative

activity conducted outside the time period of the FISC order or outside the

authorized period of investigative activity, which may involve the collection of

unauthorized information.  In some instances, agents may have reported to FBI-OGC

a possible violation involving both an overrun and an over-collection.").

### d.  The Required Minimization Procedures May Have Been Inadequate or Not Followed

Every FISA application must contain a statement of the Government's

"proposed minimization procedures." 50 U.S.C. §§ 1804(a)(4), 1823(a)(4).  These

procedures are to be, among other things: "reasonably designed in light of the

purpose and technique of the particular [surveillance/physical search], to minimize the

acquisition and retention, and prohibit the dissemination, of nonpublicly available

information concerning unconsenting United States persons consistent with the need

of the United States to obtain, produce, and disseminate foreign intelligence

information." *Id.* §§ 1801(h)(1); 1821(4).  We ask the Court to review the minimization

procedures set out in the FISA applications to determine their adequacy.

In addition, the Court should review the FISA evidence to determine whether the minimization procedures were properly followed.  *Id.* §§ 1806(e)(2); 1825(f)(1)(B); *Elshiawy*, 2017 WL 1048210, at *11 ("In order to examine whether the electronic surveillance was lawfully conducted, the reviewing court must determine whether the government followed the relevant minimization procedures as to information acquired pursuant to FISA.  In reviewing the adequacy of minimization efforts, the court must make an 'objective assessment of the [agents'] actions in light of the facts and circumstances confronting [them] at the time.'") (quoting *Scott v. United States*, 436 U.S. 128, 136 (1978)).  "In assessing the minimization effort, the court's role is to determine whether 'on the whole, the agents have shown a high regard for the right of privacy and have, done all they reasonably could to avoid unnecessary intrusion.'" S. Rep. No. 95-604 (quoting *United States v. Tortorello*, 480 F.2d 764, 784 (2d Cir. 1973), *cert. denied* 414 U.S. 886 (1973)).

The Government often has not followed FISA minimization procedures, making the Court's review all the more crucial.  A FISC opinion made public in redacted form last week reveals that the Government failed to comply with applicable minimization procedures on eighty-five percent of the queries it made during recent months on U.S. persons targeted under FISA sections 704 and 705(b) (50 U.S.C. §§

1881c and 1881d(b)).[3]  *In re Reauthorization Certifications and Related Procedures* (Foreign

Intel. Surv. Ct., April 26, 2017) at 82, *available at*

https://www.dni.gov/files/documents/icotr/51117/2016_Cert_FISC_Memo_Opin_

Order_Apr_2017.pdf.  As the FISC notes, "a non-compliance rate of 85% raises

substantial questions." *Id.*

### e.  The FISA Applications May Have Included Intentional or Reckless Material Falsehoods or Omissions

We request that the court hold a *Franks* hearing to determine if false statements

or omissions in the application were knowingly or recklessly made.  *Franks v. Delaware*,

438 U.S. 154 (1978).  As the Supreme Court held in *Franks*, "where the defendant

makes a substantial preliminary showing that a false statement knowingly and

intentionally, or with reckless disregard for the truth, was included by the affiant in the

warrant affidavit, and if the allegedly false statement is necessary to the finding of

probable cause, the Fourth Amendment requires that a hearing be held at the

defendant's request." *Id.* at 155–56.  The *Franks* principles apply to omissions as well

as false statements.  *See, e.g., United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003).

All FISA applications must set out "a statement of the facts and circumstances

relied upon by the applicant to justify his belief that (A) the target of the [electronic

---

[3] We trust that these provisions are not at issue in this case, as the Government did not include them in its FISA notice.

16

surveillance/physical search] is a foreign power or an agent of a foreign power." 50 U.S.C. §§ 1804(a)(3); 1823(a)(3). If the statement of facts and circumstances in this case omitted mention of the fact that Mr. Alimehmeti was acting only on behalf of undercover agents, our preliminary showing burden has been met. Such a reckless or intentional omission is clearly material to the FISA probable cause determination: as discussed above, it goes to the very definition of FISA probable cause.

Again, we direct the Court's attention to history: in September 2000, the Government confessed that some 75 FISA applications related to major terrorist activity contained "misstatements and omissions of material facts," including "omissions of material facts from FBI FISA affidavits relating to a prior relationship between the FBI and a FISA target." *In re All Matters Submitted to Foreign Intelligence Surveillance Court*, 218 F. Supp. 2d 611, 620 (Foreign Intel. Surv. Ct. 2002) *rev'd on other grounds sub nom.*, *In re Sealed Case*, 310 F.3d 717 (Foreign Int. Surv. Ct. Rev. 2002). This confession should have put agents on notice that the relationship between undercover agents and targets should be included in FISA affidavits.[4]

---

[4] Nor is this the only record of misstatement and omissions in FISA affidavits. The DOJ reported similar misstatements in another series of FISA applications in March 2001. *Id.* at 621. And it reported violations of FBI wiretapping and intelligence-gathering procedures in a report issued March 8, 2006. *See* Report to Congress on Implementation of Section 1001 of the USA PATRIOT Act (March 8, 2006), *available at* https://oig.justice.gov/special/s0603/index.htm. And, as discussed above, a recently-issued FISC opinion also shows the NSA's failure to follow FISA procedures. *In re Reauthorization Certifications and Related Procedures* (Foreign Intel. Surv. Ct., April 26, 2017) at 82.

Of course, our efforts to make a *Franks* preliminary showing are hampered by the fact that we "must endeavor to establish the falsity of statements that the law does not allow [us] to see." *Aziz*, 2017 WL 118253, at *6. "*Franks* cannot operate in the FISA context as it does in the ordinary criminal case. To pretend otherwise does a disservice to the defendant and to the integrity of the judiciary. . . . Yet, *Franks* serves as an indispensable check on potential abuses of the warrant process, and means must be found to keep *Franks* from becoming a dead letter in the FISA context." *United States v. Daoud*, 755 F.3d 479, 486 (7th Cir. 2014) (Rovner, J. concurring).  Under the circumstances of this case, a *Franks* hearing is justified.

### f.  The Court Should Order Disclosure of the FISA Applications, Orders, and Related Materials

If the Court does not order suppression of all FISA materials, it should disclose the FISA application, warrant, and other relevant materials to the defense.  This is especially so if the Court's *in camera* review confirms our understanding that Mr. Alimehmeti acted only for undercover law enforcement.  Participation of defense counsel in such a situation "is necessary to make an accurate determination of the legality of the [surveillance/physical search]."  50 U.S.C. §§ 1806(f); 1825(g).

Congress intended that courts order disclosure where, as here, "the court's initial review of the application, order, and fruits of the surveillance indicates that the question of legality may be complicated by factors such as 'indications of possible

misrepresentation of fact[.]'" *United States v. Belfield*, 692 F.2d 141, 147 (D.C. Cir. 1982) (quoting S. Rep. No. 95–701).  Courts have been reluctant to order disclosure, however, perhaps deferring to the Government after the Attorney General has filed an affidavit – as it has in every FISA case we know of – stating that disclosure would "harm the national security of the United States."  50 U.S.C. §§ 1806(f); 1825(g).  But Congress clearly did not contemplate such deference.  It could have forbidden disclosure in every case in which the Attorney General filed an affidavit.  Instead, it directed courts to make their own determination about when disclosure is appropriate and what disclosure is warranted, allowing judges to decide to make "portions" or "summar[ies]" of materials available under "appropriate security measures and protective orders."  *Id.*

Congress wanted courts to "strik[e] a reasonable balance between an entirely in camera proceeding which might adversely affect the defendant's ability to defend himself and mandatory disclosure, which might occasionally result in the wholesale revelation of sensitive foreign intelligence information." S. Rep. No. 95-604.  It knew that such a balance may result in difficult decisions for the Government.  S. Rep. No. 95-701 ("Cases may arise, of course, where the court believes that disclosure is necessary to make an accurate determination of legality, but the Government argues that to do so, even given the court's broad discretionary power to [excise] certain sensitive portions, would damage the national security.  In such situations the

19

Government must choose – either disclose the material or forgo the use of the surveillance-based evidence.").

However, disclosure in complex, difficult, or close cases – including where there are indications of possible factual misrepresentations – is necessary to protect defendants' Fourth and Fifth Amendment rights.  "[T]he Constitution requires the exclusion of evidence obtained by certain violations of the Fourth Amendment." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 348 (2006).  To give defendants the benefit of this constitutional requirement, they must be allowed to meaningfully litigate suppression motions.  *See, e.g., United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000) ("The suppression of material evidence helpful to the accused, whether at trial or on a motion to suppress, violates due process if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."); *see also United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 55 (1993) ("[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights. . . .  No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.") (quoting *Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 170–172 (1951) (Frankfurter, J., concurring)).  The Court should order disclosure of whatever FISA-related materials it deems appropriate to give Mr. Alimehmeti a fair opportunity to vindicate his Fourth and Fifth Amendment rights.

Sabrina P. Shroff, counsel in this case, has security clearance and has been reviewing CIPA documents.  Whatever FISA-related materials the Court deems appropriate can be disclosed to her pursuant to a protective order.

Even if the Court finds that probable cause was established and all searches and surveillance were lawfully authorized and conducted, the Court should order disclosure under 50 U.S.C. §§ 1806(g) and 1825(h) "to the extent that due process requires."  The plain intention of those sections was to allow "the Court to order disclosure of materials to which the defendant would be entitled under the Due Process Clause, such as material under *Brady v. Maryland*[.]" *Elshinawy*, 2017 WL 1048210, at *9.  Due process requires that Mr. Alimehmeti be informed if the only actions included in the FISA application's probable cause section were ones he took on behalf of undercover agents.  Such information falls under *Brady* as it is material to an entrapment defense.  *See Brady v. Maryland*, 373 U.S. 83 (1963); *see also  United States v. Cromitie*, 727 F.3d 194, 201-11 (2d Cir. 2013) (discussing entrapment defense where the FBI induced a terrorist plot.).[5]

---

[5] Any materials that may indicate that Mr. Alimehmeti was acting on behalf of actual ISIL operatives should also be shown to defense counsel on due process grounds.  *See United States v. Abuhamra*, 389 F.3d 309, 322 (2d Cir. 2004) (Acknowledging the procedural due process is a "flexible standard" and that national security concerns are relevant, but stating that "[p]articularly where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other.").

## IV.    Conclusion

Every motion involves an analysis in which we apply the facts to the law.  Here, however, all of the pertinent facts are in the Government's hands.  Recognizing that reality, we have done our best to lay a roadmap for the Court's review based on the limited information we have.  We ask that the Court review the FISA materials, and order suppression if they reveal any of the following:

(1) There was no probable cause to believe Mr. Alimehmeti was an agent of a foreign power;

(2) The required certifications were not made correctly;

(3) The surveillance and searches were not conducted within the time limits set out in the FISA orders; or

(4) The minimization procedures were inadequate or were not followed.

In the alternative, the Court should conduct a *Franks* hearing to determine if the FISA applications contained intentional or reckless material falsehoods or omissions, order the disclosure of FISA materials to security-cleared defense counsel because they are necessary to determine the legality of the FISA searches and surveillance, and further order the disclosure of *Brady* material and other evidence as required by due process.

Dated:      New York, New York
            May 15, 2017


                              Respectfully Submitted,

                              _____/s/_____
                              Sabrina P. Shroff
                              Sylvie Levine
                              Noelle E. Lyle
                              Assistant Federal Defenders
                              52 Duane Street – 10th Floor
                              New York, NY 10007
                              (212) 417-8713