# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

December 19, 2017

By ECF
Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square, Courtroom 1305
New York, New York 10007

Re:    United States of America v. Alimehmeti
       16 Cr. 398 (PAE)

Dear Judge Engelmayer,

As directed by the Court's December 13, 2017 scheduling order (see Dkt. No. 78), we respond as follows:

1)  Because the complaint and indictment did not allege, and the Rule 16 discovery did not reflect, facts supporting any concrete (or even nebulous) travel plans by Mr. Alimehmeti, the defense could not reasonably have anticipated that the government "might contend in support of count one that the defendant himself had sought to travel abroad for the purpose of facilitating an act of international terrorism."  All of the government's allegations focused on conduct predicated on Mr. Alimehmeti's effort to assist someone else; he took steps to assist an undercover officer who was preparing for his travel to the Caliphate. Absent any factual conduct that would give further notice about Mr. Alimehmeti making himself available to the Islamic State, defense counsel had no reason to anticipate such argument from the United States.

2) What was alleged concerning Mr. Alimehmeti's own possible travel is not conduct. It is speech. While it is true that Mr. Alimehmeti enthused about the undercover's travel and in that context expressed his "wish" to join in similar travel to IS, those statements were not enough to provide notice to us that Mr. Alimehmeti would be charged with travel to IS.  Statements of future hope are at best admissible as proof of Mr. Alimehmeti's mens rea, not actions to facilitate terrorism.

3) ████████████████████████████████████
████████████████████████████████████
████████████████████████████████

Honorable Paul A. Engelmayer                                    December 19, 2017
United States District Judge                                                    Page 2

Re:   <u>United States v. Alimehmeti</u>
       16 Cr. 398 (PAE)

<u>The notice goes to personnel being the undercover officer – not Mr. Alimehmeti.</u>

       The complaint, indictment, and discovery state that Mr. Alimehmeti was friends with a
group of other men (somewhat older than him) who asked him to step in and help their "friend"
who was going to travel to the Islamic State. The help was given over the course of a day. The
help was Mr. Alimehmeti accompanying the undercover as he shopped to prepare for his journey
to the Caliphate.  Mr. Alimehmeti is said to have agreed to accompany the undercover, who was
from Florida, to various stores in the New York City area so that the undercover could buy
shoes, a phone and the other sundries he needed for his ultimate destination -- Syria.  These facts
give notice of the undercover's travel. Not travel by Mr. Alimehmeti.

       Facts commonly seen in terrorism cases where travel by the defendant is alleged are
conspicuously absent here. There are no facts showing (i) a provisional or confirmed airline
booking to Syria or a gateway country such as Turkey; (ii) use of social media to connect to a
member of IS in anticipation of his own travel; (iii) plans to remain in touch with the traveling
undercover who would then facilitate Mr. Alimehmeti's travel to the IS; and (iv) no purchase of
things he would need should he travel -- shoes, backpacks, phone, flashlight, etc. This especially
informed our thinking -- Mr. Alimehmeti, were he planning to travel, would have been
encouraged to, and would have bought the same things for his own travel.

       Other facts led us to the same conclusion. Mr. Alimehmeti is a practicing Muslim and
was married at the time of the offense. That he did not leave a letter of goodbye or write out a
will as required by Islamic law contributed to the lack of notice. That Mr. Alimehmeti had
outstanding debt -- another fact that led us to conclude that it was not Mr. Alimehmeti's intent to
travel to the Caliphate.[1]

       The government surveilled Mr. Alimehmeti for almost 9 months.  It injected two
undercover agents into Mr. Alimehmeti's life much like a saline drip into a sick man. The three
men spent hours, days and weeks together. They ate, prayed, and socialized together. Laws
enforcement kept an eye on Mr. Alimehmeti, his movement in and outside his apartment. The
three men talked about their jobs, wives, families, medical conditions. They discussed Islam, the
tyranny of oppressive governments, the Islamic State; in short, the three talked nonstop.
Discovery is in the form of days of recorded conversations, documents and information seized
from Mr. Alimehmeti's emails pursuant to subpoenas issued at least a full year before his arrest.

       Despite this year-long surveillance, Mr. Alimehmeti was charged and arrested only after
he accompanied the undercover on his shopping spree. The timing of his arrest logically led us to

---

[1] Although the undercover meets with a document facilitator, Mr. Alimehmeti does not;
the undercover buys a phone; Mr. Alimehmeti does not. The undercover buys items from a
military supply store; Mr. Alimehmeti does not. The undercover goes to the airport to board his
plane for the Islamic State; Mr. Alimehmeti does not.

Honorable Paul A. Engelmayer                                    December 19, 2017
United States District Judge                                                      Page 3

Re:     United States v. Alimehmeti
        16 Cr. 398 (PAE)

conclude that the government considered the crime (18 U.S.C. § 2339B) to be complete only
after he assisted the traveling undercover with shopping for his IS departure.  Days after he took
the undercover to the airport Mr. Alimehmeti was arrested.

        The only reference to travel in the complaint is Mr. Alimehmeti's 2014 attempts to enter
the United Kingdom. For both entries, he had a sponsor letter from his future father-in-law.  He
had a round trip ticket booked -- US-UK-US.  He never made it to the UK and upon his rejection
by British customs he returned to America. The government did not allege that those two trips
were IS related. That Mr. Alimehmeti was curious about IS is not proof of an intent to travel
there.

        The government points to the language in the indictment regarding "personnel (including
himself)" (see indictment, 16 Cr. 398) as support that the defense was on notice that Mr.
Alimehmeti was the personnel he sought to provide to the Islamic State. But, the parenthetical
does not give such notice; the indictment merely tracks the boilerplate statutory language.
Compare this indictment to indictments where the defendant is the support provided.  See, e.g.,
United States v. Raishani, 17 Cr. 421 (GHW) (S.D.N.Y.), Dkt. 15. ("including personnel and
services . . . to wit, Raishani, . . . attempted to travel from the United States to Syria, via Turkey,
to join ISIS").  An indictment is required to provide notice – all the government had to do was
allege that Mr. Alimehmeti planned to travel. They knew how to do that – they did so in the
Raishani indictment. That the government chose not to set out that fact in the indictment should
not shift the responsibility to the defense to guess at what the government is going to do next –
18 months after the case is charged and 5 months after the Attorney General of the United States
mandated a charging policy which directed federal prosecutors to charge the most serious and
provable offense. See May 10, 2017 Memorandum: Department Charging and Sentencing Policy
(hereinafter "Sessions Memo").

        Finally, it was the government who crafted this fact pattern.  They created a scenario in
which the undercover took steps to travel to the Islamic State, not Mr. Alimehmeti. They could
have mapped out a fact pattern that created an opportunity for Mr. Alimehmeti to purchase an
airplane ticket, or encouraged him to communicate with a member of IS in Syria. Such facts
undoubtedly would give notice that Mr. Alimehmeti was the personnel in the indictment. See,
e.g., United States v. Juraboev, 15 Cr. 95 (WFK) (E.D.N.Y.) (proof of travel was the purchase of
an airline ticket, contacting an IS member online, going to an airport to board a plane.)  Also
absent is any sua sponte action by Mr. Alimehmeti; he does not give the undercover money and
ask to get on the same flight or to plan a trip. Despite having $2,500 (the cost the undercover
cites for the trip), he does not attempt to buy a ticket or make a booking.  Thus, in count one, we
were not on notice that Mr. Alimehmeti was himself the "personnel."

        In its application opposing bail, the government argued that Mr. Alimehmeti planned to
travel to the Islamic State. That the government argued travel to show risk of flight during a bail
proceeding, does not give notice that they could charge and prove such travel beyond a
reasonable doubt at trial.

Honorable Paul A. Engelmayer                                    December 19, 2017
United States District Judge                                                Page 4

Re:      United States v. Alimehmeti
         16 Cr. 398 (PAE)

     For the next 18 months, and for 6 months after the Sessions Memo, the government did not supersede. The only inference one could draw from the absence of a superseding indictment is the government had nothing more serious with which to charge Mr. Alimehmeti. The government concedes as much.  "It became clear to us in a way at that point [October 2017] in our preparations that was not clear in the charging phase."  See 12/12/17 Tr. at 10:22-11:5.  Had the government charged count two with the enhancement, then we would have been on notice that the personnel in count one was Mr. Alimehmeti himself.  To reconcile the two counts in the original indictment, the only inference one could draw was that the false statement in count two was unrelated to count one.

Mr. Alimehmeti's expressed verbal enthusiasm for IS does not allow one to infer travel

     The government alleges that Mr. Alimehmeti's statements of interest in, and enthusiasm for, ISIL gave the defense notice of a superseding count two (see, e.g., Complaint ¶ 14 "Alimehmeti expressed his excitement at this and inquired whether he could travel with UC-2's friend", "'I'm ready to . . . go with you, man'", etc.). But, those statements were made by a then 22-year old who was spouting off to close friends and yet he never once with them made a travel plan. And, he had every opportunity to do so. Mr. Alimehmeti undertook no acts from which one could say it was a fair inference that Mr. Alimehmeti violated 18 U.S.C. § 2339B by providing to the IS personnel that was to be himself.  This is especially the case when the complaint notes these facts under the heading: "Alimehmeti Attempts to Assist an Undercover Law Enforcement Employee in Traveling to ISIL." The heading calls for no inference at all; it is clear. The personnel is the undercover not Mr. Alimehmeti.

The defense of the superseding count two is not subsumed by the defense of count one.

     The defense did not have equal incentive then, as it does now, to investigate Mr. Alimehmeti's reasons for making a false statement in his passport application. See Transcript 12/12/17, at 20:24-25 ("The Court: The issue is at this point whether or not you had an equal incentive beforehand.").



Honorable Paul A. Engelmayer                                December 19, 2017
United States District Judge                                        Page 5

Re:     <u>United States v. Alimehmeti</u>
        16 Cr. 398 (PAE)



      Finally, it is not for the defense to infer crimes that are the most serious or readily provable. To impose such an obligation on a defendant is to turn the notice requirement of an indictment on its head. The Court should not do that.  If the government meant to give notice that personnel meant that Mr. Alimehmeti himself was the support being provided it could have so alleged as it has in other cases.  <u>See</u> <u>United States v. Raishani</u>, <u>supra</u>.  To shift to an institutional defender the responsibility and the cost of investigating a "possible" theory of prosecution would shift the economics of legal defense.

      For all of these reasons, the defense was not on reasonable notice that count one included Mr. Alimhemeti as personnel.

                      Respectfully submitted,

                      /s/
                      Sylvie Levine
                      Sabrina Shroff
                      Counsel for Mr. Alimehmeti