I1V5aliC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,              New York, N.Y.

4              v.                          16 Cr. 398 (PAE)

5   SAJMIR ALMEHMETI,

6              Defendant.

7   ------------------------------x

8                                          January 31, 2018
                                           11:05 a.m.
9

10  Before:

11                  HON. PAUL A. ENGELMAYER,

12                                         District Judge

13

14                      APPEARANCES

15  GEOFFREY S. BERMAN
         Interim United States Attorney for the
16       Southern District of New York
    BY:   EMIL J. BOVE, III
17       Assistant United States Attorney

18  SUSAN G. KELLMAN
    SARAH KUNSTLER
19       Attorneys for Defendant

20

21

22

23

24

25

I1V5aliC

```
1              (Case called)

2              THE DEPUTY CLERK:  Counselors, please state your

3    appearance for the record.

4              MR. BOVE:  Good morning, your Honor.  Emil Bove for

5    the government.

6              THE COURT:  Good morning, Mr. Bove.

7              MS. KELLMAN:  Good morning, your Honor.  Susan Kellman

8    for Mr. Alimehmeti, and I am assisted at counsel table by Sarah

9    Kunstler.

10             THE COURT:  Good morning, Ms. Kellman, good morning,

11   Ms. Kunstler, and of course good morning to you,

12   Mr. Alimehmeti.

13             THE DEFENDANT:  Good morning.

14             THE COURT:  And I have this morning signed, as I

15   indicated I would, the order that appoints Ms. Kunstler to the

16   case.

17             MS. KELLMAN:  Thank you.

18             THE COURT:  I think the business today is

19   substantially about scheduling and housekeeping, and not

20   matters of substance.  Let me identify for counsel the topics

21   that I have to cover and before I do that, I will hear from you

22   if there are other matters that we ought to be taking up.  But,

23   we need to set a trial date, we need to set a date as well for

24   jury selection, and I want to address with you the mechanics of

25   jury selection.  Part of this may turn a little bit on the
```

I1V5aliC

1   present estimate of the length of trial and whether or not we

2   use a hardship questionnaire.  I am now reconsidering whether

3   to do that and part of that would turn on the current estimates

4   of the length of trial.

5           Ms. Kellman will recall from a long trial that she and

6   I had several years ago that a hardship questionnaire proved

7   quite useful in expediting the process of jury selection.  I

8   need to set new dates now that the trial date has moved for

9   request to charge and voir dire.  I need, as well, a

10  recognition of the fact that there is new defense counsel to

11  give an opportunity for any new motions in limine to be made by

12  the defense and, for that matter, the prosecution if something

13  new has arisen.  I want to set a date for the final pretrial

14  conference.

15          I think that's all I've got for the time being.

16          Government, before we get into any of those topics, is

17  there anything else that, from your perspective, apart from the

18  exclusion of time, we need to take care of today?

19          MR. BOVE:  No, your Honor.  Thank you.

20          THE COURT:  Ms. Kellman?

21          MS. KELLMAN:  No.  Nothing beyond that, Judge.

22          THE COURT:  So let's work backwards with the trial

23  date which is I think the most rational place to start.

24          I had in mind, and I had confirmed, Ms. Kellman, your

25  availability for this date when I had my chambers reach out to

I1V5aliC

```
1    test your availability, that the trial, meaning the substance

2    of the trying of this case, would begin May 7th.  Does that

3    still work for you?

4         MS. KELLMAN:  I didn't know it was May 7th but I can

5    make it work.  Is that jury selection?

6         THE COURT:  No.  The jury selection would be the week

7    before.

8         MS. KELLMAN:  That would be tricky for me, Judge.  If

9    we can push the whole thing one week?  And I say that because I

10   am scheduled to try a case on April 6th in the Eastern

11   District.  I don't think that case will go, or I'm doing

12   everything I can to make sure it doesn't go but so far I have

13   not succeeded with that.

14        THE COURT:  How long, if it went, would that trial go?

15        MS. KELLMAN:  Oh, I don't think it will be more than a

16   week and a half but, again, jury selection there is a week

17   before.  Jury selection starts on April 6th.

18        THE COURT:  Let me tell you what I had in mind and you

19   tell me whether this is inconsistent with the worst case

20   scenario in terms of your scheduling.

21        I had in mind the following which would be that if we

22   proceeded by means of a questionnaire, a hardship questionnaire

23   would be disseminated to potential panel members on April the

24   24th.  Counsel would not need to be there, I wouldn't expect

25   you to be, but counsel would then, together, review the
```

I1V5aliC

 1    questionnaires and sort them, much as we did in the prior case

 2    and I have got a copy of the order that governed proceedings in

 3    that case to hand out today so as to give you an idea of what I

 4    had in mind.  But, counsel would collectively sort the

 5    questionnaires for the Court such that when we proceeded to

 6    jury selection, which I would expect to be beginning on

 7    Tuesday, May 1st, we would use the output of the questionnaires

 8    to help sort which jurors we are selecting among.

 9            To unpack that a little more, the standard

10    questionnaire, which my colleagues have used and which I have

11    used in too long gang cases, asks five questions with respect

12    to hardship, and what I have done in prior cases is that where

13    I ask the lawyers to sort the resulting questionnaires into

14    four categories, the first category are people who have no yes

15    answers as to any hardship question.  The second category are

16    jurors where one or more hardship boxes are checked but no

17    lawyer believes that's a valid basis for a for cause challenge.

18    The third category are jurors who have checked one or more

19    boxes where some, but not all lawyers, agree that there is a

20    valid basis for a challenge.  And the fourth category involves

21    people who have checked a hardship box or everyone agrees it is

22    a valid basis.  And in the prior cases, by agreement, we have

23    excused, telephonically, everyone in category IV and we have

24    proceeded, in order, through category I first, and then had it

25    been necessary, two or three, with jury selection.  And the

I1V5aliC

beauty of that system, of course, it means we concentrate jury

selection on the people who have not checked any boxes at all

indicative of hardship.  That gets rid of one of the hardest

problems in a case that might go three weeks or perhaps more.

         So, that would be my inclination and the idea is that

it would be on April 24th or so, depending on what the jury

clerk tells us, that the members of the venire would come and

fill in the questionnaire and then beginning the following

week, probably Tuesday, May the 1st, we would begin jury

selection using category I as our first order of business.  The

idea would be that we would have almost no hardship questions

save people who had developed a hardship insight or problem in

the intervening days.  And then the substance of the trial

itself would note begin until May 7th on the assumption that

jury selection in this case will be done within two days which

I think realistic, we would be done with jury selection by

Tuesday, May 2nd.

         That's what I had in mind.

         Ms. Kellman, does that setup create an issue for you?

         MS. KELLMAN:  I think if we are not actually starting

until May I can probably figure that out, Judge, because I

think we will be well done in the Eastern District case, again,

which hopefully won't go.

         THE COURT:  Right.

         What it would call upon you to do before jury

I1V5aliC

 1    selection beginning Tuesday, May 1st, would be to be available

 2    with Mr. Bove to look at the questionnaires and form a judgment

 3    where anybody checked a box, whether you agree or don't agree

 4    that there is a valid basis, as written, for cause, just to

 5    facilitate the sorting.  I usually put the mechanical creation

 6    of a binder for the Court and for everyone on the government,

 7    which has greater resources but uses me to weigh in as to the

 8    judgment of the validity of the hardship excuse.

 9            MS. KELLMAN:  I have two recent experiences, Judge,

10    one where I just finished with a questionnaire and the judge

11    had ordered us to give her a list of agreed upon challenges for

12    cause.  We did more than just hardship for cause and we agreed

13    upon those.  And then there was another, the following day, our

14    own separate challenges, I thought these were challenges, the

15    government thought these were challenges, and then sort through

16    those.  And when we didn't send her any of those she issued an

17    order that she had to have it by 5:00 and the reality was we

18    agreed on everything, which I think is a function of a rule in

19    the Eastern District which they call "seriously" because the

20    Judges will, on the list I agree and you don't and the

21    government doesn't, and the government doesn't and I do, the

22    Judge calls us up and reads the questionnaire and says

23    "Seriously?"  You don't agree on this?

24            THE COURT:  Well, Ms. Kellman, in this case --

25            MS. KELLMAN:  So, we agree a lot.

I1V5aliC

1           THE COURT:  -- my inclination is not to address topics

2      other than hardship on the questionnaire.  Obviously the other

3      significant topic rooting around here involves the juror's view

4      of the subject matter of the case.  It is very hard to convey

5      with any subtlety what the case is about, in writing, and I

6      think it may create more issues than it's worth and may entail

7      research and the like.  I don't want to be addressing that in a

8      written questionnaire without my having had an ability to

9      address myself to the venire.  I think it may open more doors

10     or create more problems than it is worth, but I do think if the

11     estimate of the length of trial winds up being in the, all-in,

12     three to four-week range, there is I think a value in, as much

13     as we can, getting hardship out of the equation before the

14     jurors start engaging in individual questioning.

15           I think jury selection here may take a little while

16     because I'm careful in my jury selection and I do want to make

17     sure I have time with individual members to seriously hear from

18     them to the extent that the subject matter of the case is a

19     cause for concern.  I would love to remove hardship from that

20     equation as much as we can.  That's the thought process, and

21     that means if it is just a hardship questionnaire it means that

22     your review of the questionnaires is, frankly, pretty easy and

23     the likelihood that the "seriously" test will be met with large

24     scale agreement is high.

25           MS. KELLMAN:  I think that's right.  I'm a little

I1V5aliC

1      concerned about the second part of the Court's equation which

2      is not putting anything in that questionnaire or any

3      questionnaire before the jurors show up about the subject

4      matter of the case because I think that sitting in the jury box

5      and being questioned, as subtle as the Court might be, might

6      cause a juror not to be as candid as they would otherwise be.

7              THE COURT:  They won't be questioned in front of the

8      other jurors, absolutely not.

9              MS. KELLMAN:  Okay.

10             THE COURT:  As you will recall from the Trinitarios

11     case where you were trial counsel, on issues involving the

12     substantive matter the of the case I wound up having individual

13     jurors there meet me in the robing room with counsel there.  We

14     can equally as well do it at the side bar.  But, the point is

15     that whatever the spatial logistics, they certainly won't be

16     answering questions like that in front of other panel members.

17             MS. KELLMAN:  Okay.  That's fine.

18             THE COURT:  Candidly, one reason for that is I don't

19     want somebody to say something that's going to have an adverse

20     effect on the other panel members.  So, it is not just their

21     own willingness to be candid, it is a matter of respecting the

22     defendant's rights, in particular, to make sure that something

23     that somebody else says doesn't set off other jurors.

24             MS. KELLMAN:  That sounds right.

25             THE COURT:  So, with that, can you make the schedule

I1V5aliC

1    that I have outlined work?

2              MS. KELLMAN:  I think I can, Judge.

3              THE COURT:  Mr. Bove?

4              MR. BOVE:  Yes, Judge.

5              THE COURT:  Then, again, the notion will be that the

6    questionnaire will be disseminated among members of the venire

7    the week of April 23rd and I expect, from prior experience,

8    that will be Tuesday the 24th.  I think the goal is not to have

9    all of those good people coming here the day that other

10   cases -- Monday -- are subject to jury selection, but it will

11   probably be Tuesday but, just FYI, meaning counsel will be

12   promptly called upon then to review and sort the questionnaires

13   in the matter that I have described.

14             Jury selection will then be the following week and I

15   expect, again, it will likely be Tuesday, May 1st.  The goal

16   here being not to interfere with juror foot traffic in other

17   cases that are being chosen on that Monday.  So, probably,

18   subject to what Mr. Smallman hears from our jury clerk, it will

19   probably be Tuesday, May 1st, but it will be that week.

20             And then the substance of the trial, regardless of the

21   length of jury selection, will begin on Monday, May 7th.  All

22   right?  So, hearing no objection, that's our schedule.

23             The next issue would then be -- by the way, Mr. Bove,

24   I am assuming that your trial estimate is about three weeks?  I

25   think it had been less but, of course, that was before the MCC

I1V5aliC

1     issue entered the fray.

2              MR. BOVE:  We are still going to make every effort,

3     Judge, to get our case-in-chief in in 10 trial days.  I think

4     there is some risk that it spills over into the third week and

5     being conservative with that estimate I think it makes sense.

6              THE COURT:  And I ordinarily do not fit on Fridays.  I

7     do sit a very full, long, trial day.  I don't sit Fridays, I am

8     amenable to doing it.  I have done it in cases where my

9     perception is that sitting a fifth trial day has a real

10    prospect of getting the trial done in fewer weeks.  In a

11    five-day case it is easier to do it that way.  But, in any

12    event, you are estimating your case, including jury selection,

13    would be done within 10 days?

14             MR. BOVE:  Excluding jury selection.

15             THE COURT:  Excluding jury selection but including

16    openings, including closings?  I am trying to figure out what

17    it is you are counting.

18             MR. BOVE:  Just the presentation of evidence.  And,

19    again, as matter of strategy, we very much would want to get

20    the case to the jury by the end of the second week and would

21    make every effort to do so, but to be conservative I am

22    envisioning right now 10 days involving presentation of

23    evidence.

24             THE COURT:  So you would have 10 days based on your

25    realistic estimates based on the length of cross-examination?

I1V5aliC

1          MR. BOVE:  Yes.

2          THE COURT:  But your estimate right now is that not

3    including opening statements, not including closings, not

4    including charging the jury, and not including deliberations

5    but including direct and cross and assuming no defense case, we

6    are looking at 10 days?

7          MR. BOVE:  Yes, Judge.

8          THE COURT:  And obviously, those are a lot of

9    exclusions there and the defense case is something that I can't

10   assume will be a null set.

11         MR. BOVE:  Right.

12         MS. KELLMAN:  Could be dozens of witnesses.

13         THE COURT:  Say again?

14         MS. KELLMAN:  Could be dozens of witnesses.

15         THE COURT:  It could be but you are smiling, so I

16   don't know whether that's just preserving your rights or

17   something more.

18         MS. KELLMAN:  Just preserving our rights.

19         THE COURT:  That's what I read you to be meaning.

20         Look.  The bottom line is I think I need to advise the

21   venire that this case is expected to last three and perhaps

22   four or more weeks, as improbable as it will be, but I think

23   for the purposes of the hardship questionnaire I think I need

24   to err on the side of caution.  In other words, given opening

25   statements, closing, deliberations, and the possibility that I

I1V5aliC

```
 1   will be sitting four days a week, this could easily go into a
 2   fourth week.
 3            MR. BOVE:  I agree.
 4            MS. KELLMAN:  I think that's right, Judge, although I
 5   think we want to figure out some language about Memorial Day
 6   weekend.
 7            THE COURT:  Yes.
 8            MS. KELLMAN:  Because the bottom line is we probably
 9   won't be here then and I don't think we want to lose jurors for
10   that.
11            THE COURT:  Sure.  In fact, Mr. Smallman, this is a
12   good time for you to hand out the order that we used in a gang
13   case that I had in 2016 which would form, I think, the
14   structure of the order that I expect here.
15            Why don't counsel take a look at this before we move
16   further.  It substantially sets out the sequence that I
17   summarized earlier but it also contains the questionnaire we
18   used in that prior case.  Why don't you take a look at it to
19   see if that, itself, raises any questions.
20            (Pause)
21            THE COURT:  Counsel, have you had an opportunity to
22   look at that order?
23            MR. BOVE:  Yes, Judge.  Thank you.
24            THE COURT:  This is broadly what I have in mind here.
25            Ms. Kellman, does that raise any questions to you in
```

I1V5aliC

1   your mind?

2          MS. KELLMAN:  Just one, Judge, and that would be

3   perhaps an additional question about a prepaid vacation or

4   travel plans which would include probably work and vacation.  I

5   am not sure that any of those fit into the Court's well-crafted

6   questions but it seems to me, especially since it is the end of

7   May, we may be at the end of May, that something that inquires

8   about prepaid travel or vacation plans that can't be changed.

9          THE COURT:  Right.  I mean, I think the undue hardship

10  or extreme inconvenience is picked up in no. 4 but perhaps

11  there is a way of modifying no. 4 to include that.

12          MS. KELLMAN:  Okay.

13          THE COURT:  All right.  That's a fair point and we

14  will modify that.  In any event, that's what I have in mind.

15  Other than that, though, does seeing this in black and white

16  change any answers you have given, to date?

17          MR. BOVE:  No, your Honor.

18          MS. KELLMAN:  No, your Honor.

19          THE COURT:  All right.  Then I think the next question

20  is to set deadlines for submissions prior to trial.  I would

21  propose that request to charge and proposed voir dire be due on

22  April 2nd.

23          Government, I gather you were just a few days away

24  from your submissions as of when we adjourned and, Ms. Kellman,

25  you will, no doubt, have the benefit of whatever work had been

I1V5aliC

1    done by your predecessor counsel as well?

2              MS. KELLMAN:  Yes, your Honor.

3              THE COURT:  All right.

4              As to motions *in limine*, I can't rule out,

5    Ms. Kellman, that you will have something up your sleeve when

6    you review the record in the case; and government, for your

7    part, including based on your discussions with Ms. Kellman, you

8    may have something as well, so I'm going to set due dates for

9    additional motions *in limine* but for avoidance of doubt,

10   everyone is bound by my prior rulings.  Change of counsel

11   doesn't change that.  I am going to propose that any new motion

12   *in limine* be due March the 5th and any opposition be due March

13   19th.  Does that work for everybody?

14             MR. BOVE:  Yes.

15             MS. KELLMAN:  Yes, Judge.

16             THE COURT:  At this point, government, are you aware

17   of any additional 404(b) or other disclosures, the sorts of

18   things that by their nature tend to bring to the fore, motions

19   in limine?

20             MR. BOVE:  No, Judge.

21             I think what we would seek to do with that deadline is

22   specify for the Court and defense counsel the terrorist

23   propaganda that we seek to offer at trial so that the Court has

24   an opportunity to review it and rule, if the Court is inclined,

25   on the specific admissibility of what we propose.

I1V5aliC

```
 1              THE COURT:  Well, maybe the way to do this is as
 2     follows.  May I suggest you move in limine for the receipt of
 3     the specific items you have in mind.  I have already set a
 4     broad ground rule subject to 403 considerations that may be
 5     prompted by particular items or the volume of particular items.
 6     So, maybe the right way to do this is on March 5th, for you to
 7     move in limine for the receipt of that and then if the defense
 8     objects, their opposition would be due March 19th.
 9              MR. BOVE:  I agree and we will plan to do that.
10              THE COURT:  What I would urge to you do, though, is in
11     advance, it may make sense before sending an opening shot, to
12     sit down with Ms. Kellman and have a show and tell as to what
13     you have in mind.  It is entirely possible that with
14     Ms. Kellman reserving her rights to appeal based on my earlier
15     ruling, it may be that the application of the principles in
16     that ruling doesn't -- that your proposed application doesn't
17     offend her, and in that case it may be that you can submit
18     something on March 5th that indicates that having reviewed the
19     material the defense does not have additional 403 or that you
20     have agreed on a universe.
21              MR. BOVE:  Yes, Judge.
22              MS. KELLMAN:  Or we can limit the universe.
23              THE COURT:  I am saying that may be subject of your
24     agreement.
25              MS. KELLMAN:  Yes.
```

I1V5aliC

1          THE COURT:  It may be that rather than getting into a

2     whole litigated battle that if Mr. Bove, two weeks before then,

3     sits down with you in a conference room and shows you the

4     particular propaganda and you basically say, well, you can get

5     rid of these two items where we have an agreement, that would

6     be music to my ears.  I am encouraging to you do that.

7          MS. KELLMAN:  Very good.

8          MR. BOVE:  Yes, Judge.

9          THE COURT:  Mr. Bove, in the event that there is some

10    other 404(b) notice or something like that, I will ask you at

11    this point to make it in real-time.  In other words, rather

12    than my setting some new deadline, since we had a 404(b) notice

13    earlier, it was productive in framing various motions *in

14    limine*.  At this point the last thing I want to have is any

15    possibility of trial delay.  So, if anything else crosses your

16    field of vision I expect you, forthwith, even if it means

17    making is serial disclosures, to make a disclosure to the

18    defense so that Ms. Kellman can act accordingly including, if

19    necessary, moving on the basis of that on March 5th.

20         MR. BOVE:  Yes, Judge.

21         THE COURT:  I need to set a final pretrial conference

22    date.  Let's have a final pretrial conference Monday, April

23    23rd, at 10:00 am.  The beauty of that is if we have learned

24    more information that leads me to tweak the text of the jury

25    questionnaire that would be handed out the following day, we

I1V5aliC

1    will be able to work together on that.

2              Does that work for you, government?

3              MR. BOVE:  Yes, Judge.

4              THE COURT:  Ms. Kellman?

5              MS. KELLMAN:  Yes, your Honor.

6              THE COURT:  All right.

7              Ms. Kellman, do you expect to be seeking leave to add

8    anyone else to your team?

9              MS. KELLMAN:  It's not impossible, Judge, and I

10   wouldn't have answered that the same way when we first came in

11   but Ms. Kunstler is working with me on the April trial in the

12   Eastern District, and so if it becomes necessary --

13             THE COURT:  Look.  I am open to it, but you should

14   think about that sooner rather than later.

15             MS. KELLMAN:  I am thinking about it right now.

16             THE COURT:  Okay.  Very good.

17             The only other thing that I have on my agenda is to

18   address the exclusion of time.  Before we do that, though, this

19   discussion may have jarred something loose.

20             Mr. Bove, anything you want to raise?

21             MR. BOVE:  No, your Honor.  Thank you.

22             THE COURT:  Ms. Kellman, anything from you?

23             MS. KELLMAN:  Judge, just one minor thing and that is

24   am I correct in assuming that Federal Defender is now relieved?

25             THE COURT:  Yes.  That, I had kept them on the case

I1V5aliC

1    for transitional purposes but effective now, Federal Defenders

2    are relieved.  I do expect that they will continue to work with

3    you in facilitating the transition.  I take it you have worked

4    together smoothly so far in this matter?

5            MS. KELLMAN:  Oh, so smoothly.

6            THE COURT:  Look.  They were close to trial, they had

7    spent a lot of time with Mr. Alimehmeti, they had given at

8    least some early indications of directions they intended to

9    take the defense.  Have you gotten the benefit of that --

10           MS. KELLMAN:  Yes, your Honor.

11           THE COURT:  -- transfer of knowledge.

12           MS. KELLMAN:  I think we have gotten all that we need

13   from Federal Defenders.

14           THE COURT:  Okay.  I am sure if additional questions

15   arise in your mind, I am sure they'll be in touch.

16           MS. KELLMAN:  I will reach out.

17           THE COURT:  Anything else from you, Ms. Kellman?

18           MS. KELLMAN:  Very briefly, Judge, and this is

19   something I hope I can work out either between the government

20   and myself or the MCC, but my client has recently been moved to

21   the 10th floor as a result of this exchange of materials and my

22   understanding is that he hasn't actually technically been put

23   in SAMs, under SAMs custody yet.  But, even if he were, he is

24   allowed I think one 15-minute phone call every month -- two,

25   I'm sorry, two 15-minute phone calls every month, and he hasn't

I1V5aliC

1    had anyway.

2         THE COURT:  Is that punitive because of the sharing of

3    materials or is it simply attempting to preclude further

4    sharing?

5         MS. KELLMAN:  I don't think it is meant to be

6    punitive.  I think the SAMs system is a monitoring system that

7    is quite severe and I think that -- I don't know that I would

8    call it punitive except that he has been upgraded to that

9    status.  My understanding is he was not at that status prior to

10   this incident.  So, with the upgrade to SAMs status, his

11   ability to make phone calls is severely limited.

12        THE COURT:  Is that inhibiting his exposure to counsel

13   or are you talking about phone calls independent?

14        MS. KELLMAN:  No, just phone calls to his family.

15        THE COURT:  May I suggest, I stand ready if other

16   steps don't yield success to weigh in, to the extent I can.

17        MS. KELLMAN:  Understood, Judge.  I am fairly certain

18   we can work it out with the jail but I just did want to put it

19   on the record.

20        THE COURT:  I appreciate your doing that.

21        Look.  My experience is that the right sequence is for

22   you to take a hand at it first with the MCC and with counsel

23   there.  If that doesn't work, government counsel is usually

24   successful in prying action loose.  If none of that works,

25   reach out to me and I will read what you have written and try

I1V5aliC

1    to make things right.

2                MS. KELLMAN:  I think that I can probably work it out

3    with Adam Johnson.

4                THE COURT:  I am glad you put that the on the record.

5                With respect to exclusion of time, I previously

6    excluded time formally through January 29th, earlier when we

7    had the trial date set with jury selection to begin that day.

8    Today is the 31st.  I don't think I have actually had an order

9    that formally excludes time until the 31st, but there is, of

10   course, the pending motion for courtroom closure and a variety

11   of other measures that are before me.  I am making good

12   progress on that and hope to have something out reasonably

13   soon, but I think by operation of law, the exclusion therefore

14   ran -- continues to run until today.  For avoidance of doubt,

15   though, I am treating all the time until today, including those

16   two days that I hadn't formally announced as part of an

17   exclusion, as excluded.

18               Be that as it may, does the government have a motion

19   governing the period between now and the trial date?

20               MR. BOVE:  Yes, your Honor.

21               The government asks that time be excluded in the

22   interest of justice until the trial date May 7th in order to

23   allow new defense counsel to continue to review discovery,

24   prepare the trial defense, and evaluate pretrial motions

25   pursuant to the schedule set today.

I1V5aliC

1        THE COURT:  Ms. Kellman?

2        MS. KELLMAN:  That's without objection, your Honor.

3        THE COURT:  I will exclude the time.

4        There are any number of good reasons for excluding the

5   time between now and May 7th and I will recite them in a moment

6   but I find, as a broad proposition, that the interest of

7   justice compellingly support the exclusion of time between now

8   and May 7th.  First and most of all, we have new counsel for

9   the defense and this is a case that has a very substantial

10  factual record which includes, among other things, a

11  substantial number of tape recordings; there is also a

12  substantial amount of material from the recent -- that has come

13  to light in light of the recent MCC issue.  There is a lot of

14  learning, in other words, for defense counsel to do.

15  Ms. Kellman was appointed to this case earlier this month,

16  Ms. Kunstler has been appointed this week.  They have got a lot

17  of work ahead of them and the exclusion of time is to make sure

18  that new counsel is fully up to speed on the case as of the

19  date of trial.  The time excluded will also allow new counsel

20  to capitalize on the significant work done by prior counsel.

21        Independent of that, I have a motion that I am still

22  working on that separately justifies the exclusion of time.  I

23  expect that new defense counsel may have additional motions *in*

24  *limine* that she wishes to consider as she immerses herself in

25  the case.  I am also mindful, from ex parte communications with

I1V5aliC

1  prior defense counsel, that there may well be investigative

2  techniques and steps that the defense wants to take in

3  preparation for trial and stepping into the shoes of prior

4  counsel with respect to some of those steps may, itself, take a

5  certain amount of time.

6         For all of those reasons, separately and together, the

7  exclusion is well worth it.

8         May I ask one question of you, Mr. Bove, which may be

9  germane to the closure motion or aspects of it?  The recordings

10 in this case that you would expect to play at trial, are they

11 all audio or are there visual one as well?

12        MR. BOVE:  There are visuals ones as well.

13        THE COURT:  And, can you say anything more about the

14 spatial environments in which the videos that you might play at

15 trial, are situated?

16        MR. BOVE:  As an example, Judge, the one that I am

17 most familiar with is a video camera that looked into -- that

18 was affixed to a vehicle and looked across the driver's side

19 over the passenger side, and so there are aspects of that

20 recording we would offer where the driver is one of the

21 undercovers and the passenger is the defendant.

22        THE COURT:  Do you know if there are any videos that

23 you might offer at trial that are in interior spaces, of the

24 apartment, for example, of the defendant's?

25        MR. BOVE:  I don't believe so, Judge.  But that's my

I1V5aliC

1    understanding right now.

2            THE COURT:  Okay.  But, in other words, when -- one of

3    the reasons this matters is there has been some discussion,

4    including when the media spoke about the partial closure, about

5    alternative means by which there would be public access to the

6    trial, and one of the things that I wanted to make sure I was

7    accurate about in addressing those issues in the decision was

8    the extent to which there might be videos as opposed to audio

9    taped evidence, and what you are representing to me is there is

10    likely to be a videotape as well as audio tape.

11            MR. BOVE:  There will be videotape.  As another

12    example there is surveillance video without audio taken by

13    agents who were surveilling the operation that involved the

14    purported traveler and the defendant escorting the traveler

15    through the city, so that's another undercover with the

16    defendant who we do expect to testify who was shown on.

17            THE COURT:  Do you expect that any of the videotape

18    evidence that you may show, were it not pixelated, would tend

19    to identify the undercover?  In other words, assuming that the

20    videotape that you are going play at trial were publicly

21    available, would it tend to show facial or body features of the

22    undercover, of any undercover?

23            MR. BOVE:  Absolutely.  Very clear images of their

24    faces.

25            THE COURT:  All right.  That's helpful to know.  I

I1V5aliC

1    want to make sure that I am being nuanced in its treatment and

2    it is helpful to know that.

3              MR. BOVE:  Thank you, Judge.

4              THE COURT:  Anything further?

5              MS. KELLMAN:  Just one other question with respect to

6    the jury itself, is it the Court's intention to have this jury

7    be anonymous or semi-anonymous?

8              THE COURT:  I have no intention of talking any unusual

9    steps.  I don't think that they're warranted here.

10             MS. KELLMAN:  Thank you.

11             THE COURT:  I take it you are not moving for any such

12   step.

13             MS. KELLMAN:  Certainly not.

14             THE COURT:  Thank you.  We stand adjourned.

15             MS. KELLMAN:  Judge, I do have one on thing.  I'm

16   sorry.  I apologize.

17             I noticed that the Court signed this order dated

18   today.  I had asked that Ms. Kellman be appointed *nunc pro*

19   *tunc*, which is in the letter.

20             THE COURT:  For the record, the appointment is *nunc*

21   *pro tunc*.

22             MS. KELLMAN:  Thank you, Judge.

23             THE COURT:  Thank you.

24                              o0o

25