# LAW OFFICES OF SUSAN G. KELLMAN
25 EIGHTH AVENUE • BROOKLYN, NEW YORK 11217
(718) 783-8200 • FAX (718) 783-8226 • SGK@KELLMANESQ.COM
FELLOW, AMERICAN COLLEGE OF TRIAL LAWYERS

November 21, 2019

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, NY, 10007

        Re:    *United States v. Sajmir Alimehmeti*
                  16 Cr. 398 (PAE)

Dear Judge Engelmayer,

      Please accept this letter as our objections to the Pre-Sentence Investigation Report ("PSR").

## OBJECTIONS TO SPECIFIC REPORT PARAGRAPHS

      With respect to the conviction listed in **Paragraph 80**, we ask that the details related in **Paragraph 81** be removed or redacted. [REDACTED]

## MR. ALIMEHMETI'S OBJECTIONS TO THE APPLICATION OF UNITED STATES SENTENCING GUIDELINE § 3A1.4

      Probation has recommended a 360-month sentence based on the 360-540-month sentence fixed by the Sentencing Guidelines. The Guideline term was driven largely by the application of U.S.S.G. § 3A1.4, the "Terrorism" enhancement. Were it not for the enhancement, the applicable guideline range would have been 78-92 months.[1] For the reasons outlined below, we object to the application of U.S.S.G. § 3A1.4 here.

---

[1] This is based on a Count One offense level of 28, a Count Two offense level of 8, a one-point enhancement for the grouping of the two offenses, and a 3-level reduction for acceptance of responsibility, which results in an offense level of 26. With an adjusted offense level of 26, and a Criminal History Category of III, Mr. Alimehmeti would be facing 78-92 months.

November 21, 2019
Hon. Paul A. Engelmayer
Page 2 of 7

**a. The terrorism enhancement does not apply here, as Mr. Alimehmeti's conduct was not "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."**

The Guideline terrorism enhancement applies "if the offense is a felony that involved, or was intended to promote, a federal crime of terrorism." The definition of "federal crime of terrorism" is found in 18 U.S.C. § 2332b(g)(5).[2]

18 U.S.C. § 2332b(g)(5) provides that, as used in 18 U.S.C. § 2332b(f) (a subdivision providing the Attorney General with "primary investigative responsibility for all Federal crimes of terrorism"), "Federal crime of terrorism" means:

> an offense that—
>
> (A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and
>
> (B) is a violation of [any one of many statutes, including 18 U.S.C. § 2339B].

Thus, under § 2332b(g)(5), a "federal crime of terrorism" is a crime directed against government. The problem with the terrorism enhancement is that it makes no distinction between crimes directed at the United States (and/or its citizens) and crimes directed at foreign governments or the unofficial "government" of a failed state.

We have a special interest in protecting institutions and personnel associated with the United States government from acts of terrorism (especially acts of terrorism conducted in retaliation against the conduct of the United States government in its "war on terror"), and, as with punishments for crimes like treason and espionage, an interest in punishing more severely (and bearing the costs of prosecuting and punishing more severely) those who target our federal institutions and personnel. See *Kennedy v. Louisiana*, 554 U.S. 407, 437 (2008) (expressly reserving the right to uphold heightened penalties for, inter alia, terrorism, which it described as an "offense[] against the State"). However, here, there is no evidence that Mr. Alimehmeti acted with the specific intent to influence, affect, intimidate, coerce or retaliate against conduct of the *United States* government.[105] Rather, the Mr. Alimehmeti's conduct was directed at attempting to provide support to a civil war waging in the failed state of Syria.

We may also have interests in protecting governments abroad, but there must be room for consideration of the complex historical, political, and religious circumstances at play in a case involving a foreign government. The guidelines don't allow for such consideration. The terrorism enhancement guideline makes no distinction between crimes directed against the

---

[2] *See* U.S.S.G. § 3A1.4 cmt. n.1.

United States government and crimes involving only foreign governments.[3]

It does not appear that, in adopting the definition of "federal crime of terrorism" found in 18 U.S.C. § 2332b(g)(5), the Sentencing Commission considered whether the word "government" in that provision of §2332b refers to the government of the United States or to any government anyplace in the world, and, if the latter, whether the same enhancement should apply whether the target government was domestic or foreign, whether the government was officially recognized or not officially recognized, and whether or not any of the defendant's conduct occurred in or touched the United States.

18 U.S.C. § 2332b(g)(5) is a subdivision of 18 U.S.C. § 2332b. A close reading of 18 U.S.C. § 2332b suggests that, when Congress used the term "federal crime of terrorism" in that statute, it had the interests of the United States and the government of the United States in mind.

18 U.S.C. § 2332b asserts federal jurisdiction over violent conduct "transcending national boundaries" that violates state or federal law and that seriously harms or risks serious persons and property inside the United States and the personnel and property of the United States. *See* 18 U.S.C. §§ 2332b(a), 2332 (b)(1)(C), 2332b(b)(1)(D). The statute requires that the transcending conduct be committed in a circumstance that provides the basis for federal jurisdiction. *See* 18 U.S.C. § 2332b(b). The circumstances are enumerated in §2332(b)(1) and include not only such staples as the use of the mail and an effect on interstate or foreign commerce, but also that the "victim, or the intended victim, is the United States Government, a member of the uniformed services, or any official, officer, employee, or agent of the legislative, executive, or judicial branches, or of any department or agency, of the United States." 18 U.S.C. §2332b(b)(1)(C). Under § 2332b(f), the Attorney General is given "primary investigative authority" not with respect to all violations of § 2332b, but with a special subset of federal crimes: "all Federal crimes of terrorism" (defined in § 2332b(g)(5)), and specific violations of Title 18 that, for the most part, involve attacks on U.S. government officials, U.S. government property, U.S. fortifications and U.S. energy facilities.

Given the § 2332b's focus on conduct occurring beyond the nation's borders but aimed at harming U.S. government personnel and/or property and the country at large, it is arguable that, when Congress used the word "government" in its definition of the term "Federal crimes of terrorism" in § 2332b, it meant to refer to the government of the United States, not any government in the world. But even if Congress meant the latter, there is no indication the Sentencing Commission considered applicability of the same enhancement that would apply in a case of terrorism against the U.S. to cases where, as here, the defendants had no contacts with or aims directed against the United States.

---

[3] The Second Circuit has approved the application of the terrorism enhancement in cases involving a foreign government without discussing the significance of the fact that the United States government was not involved. (See, e.g., *United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009), and *United States v. Awan*, 607 F.3d 306, 317-8 (2d Cir. 2010); in both cases, unlike here, defendants engaged in the offense conduct inside the United States.)

November 21, 2019
Hon. Paul A. Engelmayer
Page 4 of 7

  Here, Mr. Alimehmeti attempted to provide materials support to a terrorist organization by trying to aid another person in his efforts to travel to Syria to join ISIS and lied to a government official about losing his passport in the hope of obtaining a "clean" passport that might make it easier for him to travel to Syria where he hoped to join ISIS. His offense conduct did not involve targets or victims from or in the United States. It was not directed at the United States government, U.S. government personnel or members of our armed forces. For these reasons, the "Terrorism" enhancement under U.S.S.G. § 3A1.4 is improperly applied here.

  Assuming *ex arguendo* that the Court finds that U.S.S.G. § 3A1.4 applies in this case, we respectfully asked the Court to nonetheless consider a downward variance on the basis of Alimehmeti's lack of specific intent to harm the United States or its citizens, and the complicated geopolitical context in which he acted, which makes his conduct no more and/or less serious than the conduct in several of the cases listed in the footnote below in which the sentencing court either nullified or substantially reduced the impact of the terrorism enhancement when it imposed sentence.[4]

---

[4] *See United States* v. Stewart, 590 F.3d 93, 138 (2d Cir. 2009) (affirming the district court's decision not to apply the sentencing enhancement for a defendant convicted under 18 U.S.C. § 2339B when there was no evidence that he "sought to influence or affect the conduct of a government.") *See United States v. Ali Yasin Ahmed*, 12 Cr. 661 (JG) (defendant, who trained and fought with Al-Shabaab in Somalia, and faced a 180- month statutory maximum, received a 132-month sentence when his conduct had no connection to the United States and was not directed at the United States government); *United States v. Thavaraja,* 740 F. 3d 253 (2d Cir. 2014) (defendant was the principal procurement officer for LTTE, a foreign terrorist organization in Sri Lanka, and in that capacity, not only purchased at least $20 million worth of military-grade weapons and materials used to make suicide bombs but also played a role in scheme to bribe State Department officials; advisory guidelines 180 months; 108 month sentence imposed); *United States v. Amawi*, 695 F.3d 457 (6th Cir. 2012) (rejecting Government's appeal of sentences of 240 months, 144 months, and 100 months for three defendants found guilty of conspiracy to kill and maim persons outside United States, conspiracy to provide material support to terrorists in furtherance of killing of U.S. nationals, and distributing information regarding manufacture of explosives, destructive devices, and weapons of mass destruction, where Guidelines range was life in prison); *United States v. Stewart*, 686 F.3d 156, 159-61 (2d Cir. 2012) (affirming sentence of 120 months for former defense attorney convicted of conspiring to defraud United States, providing and concealing material support to a conspiracy to kill and kidnap persons in a foreign country, and making false statements, where Guidelines range was 360 months to life); *United States v. Warsame*, 651 F. Supp. 2d 978, 981 (D. Minn. 2009) (as here, advisory guideline sentence with terrorism enhancement 180 months for defendant who trained at terrorist camps, had access to al Qaeda leadership, and while maintaining communications with al Qaeda associates, entered and sought to establish residency in the U.S; court imposed 92-month sentence); *United States v. Benkahla*, 501 F.Supp. 2d 748 (E.D. Va. 2007) (guideline range of 210 - 262 months for defendant who gave false testimony to grand jury and FBI regarding participation in jihadist training camp; after court determines that both a departure and a variance were warranted, defendant sentenced to 121 months).

**b. In enacting the terrorism enhancement, the Sentencing Commission failed to develop guidelines based on empirical data.**

When the Sentencing Commission fails to fulfill "its characteristic institutional role" of developing a particular guideline, or its later amendments, based upon empirical data, national experience, or some rational policy basis, the district court has the discretion to conclude that the resulting advisory range "yields a sentence 'greater than necessary' to achieve §3553(a)'s purposes, even in a mine-run case." *United States v. Kimbrough*, 128 S. Ct. 558, 575 (2007); *Spears v. United States*, 129 S. Ct. 840, 843 (2009) (explaining that when the Commission fails to fulfill its institutional role, a district court can vary from the guidelines "based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case").

Since there is no indication that, in establishing the terrorism enhancement, the Commission took into account any "empirical data" or "national experience", the advice that the benchmark sentence is the maximum sentence ought to be rejected as a matter of policy. Cf. *Kimbrough*, 522 U.S. at 109 ("In formulating Guidelines ranges for crack cocaine offenses, as we earlier noted, the Commission looked to the mandatory minimum sentences set in the 1986 Act, and did not take account of `empirical data and national experience.'") (Citation omitted). Cf. *United States v. Ressam*, 679 F.3d 1069, 1107 (9th Cir. 2012) (Schroeder, J., dissenting), and *United States v. Jayyousi*, 657 F.3d 1085, 1133 (11th Cir. 2011) (Barkett, J., dissenting) (criticizing assumption that upon release from prison a particular defendant would engage in future terrorist conduct as speculative, unwarranted, and without basis in the record including any empirical studies about recidivism).

The terrorism enhancement is a creature of Congress. The Sentencing Commission enacted it pursuant to a Congressional directive and the Commission has amended it pursuant to other directives, each time recommending broader application and harsher penalties. In 1994, Congress directed the Sentencing Commission to create an adjustment for prison sentences resulting from felonies involving international terrorism. *Violent Crime Control and Law Enforcement Act of 1994*, Pub. L. No. 103-322, § 120004 (to be codified at 28 U.S.C. 994). Congress directed that the enhancement apply to crimes involving or intending to promote international terrorism, "unless such involvement or intent is itself an element of the crime." *Id.* In the wake of the Oklahoma City bombing, Congress directed that § 3A1.4 should apply to domestic terrorism offenses as well. Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 730 (to be codified at 28 U.S.C. 994 (2006). Prior to the terrorist attacks of September 11, 2001, there were no base offense Guidelines for federal crimes of terrorism. U.S.S.G., App. C, Amend. 637 (Nov. 1, 2002) (noting that amendments under the USA Patriot Act modify existing Sentencing Guidelines "for a number of offenses that, prior to the enactment of the Act, were enumerated in 18 U.S.C. § 2332b(g)(5) as predicate offenses for federal crimes of terrorism but were not explicitly incorporated in the guidelines."). The Sentencing Commission created a base offense guideline for providing material support to a designated

foreign terrorist organization in the wake of the attacks of September 11, 2001. *Id*. But it failed to restrict the sweeping coverage of § 3A1.4, which Congress directed be created as a stop-gap measure to enhance sentences for felony crimes, unless the crime itself related to or involved terrorism. VCCLEA, Pub. L. No. 103-322, § 120004.

Such a massive guideline increase must be applied sparingly. The failure by the Commission to restrict the coverage of § 3A1.4 produces the irrational result that the Guideline for attempting to provide material support to a designated organization is then enhanced for terrorism itself – even in this inchoate stage. When combined with § 3A1.4's requirement that every defendant also be placed in Criminal History Category VI – no matter the conduct involved – the lowest possible sentencing range is 292-365 months, which includes a three-point reduction for acceptance of responsibility. Since the maximum penalty authorized by statute for providing material support to a designated foreign terrorist organization was 180 months, a statutory maximum that will be exceeded by the guideline in every case, ignores the inchoate gradations applicable to virtually all offense, to wit, an "attempt" or an "agreement" and thus yields an absurd result.

**c. The terrorism enhancement does not allow for particularized sentencing.**

The Supreme Court has charged all sentencing courts to impose individualized sentences in all cases. *Kimbrough v. United States,* 552 U.S. 85 (2007). Terrorism cases are not exempt from this mandate. Across the country, sentencing courts have imposed – and continue to impose sentences which have nullified or substantially reduced the impact of the terrorism enhancement.

This is because the terrorism enhancement does not allow for particularized sentencing. It effectively asks the Court to abdicate its role at sentencing and not consider, in addition to the fact that Mr. Alimehmeti had nothing to do with any attack or planned attack on or in the United States or any intent to harm anyone from the United States, his history and characteristics, including his youth, the difficult circumstances of his upbringing, and his age and vulnerability at the time he became involved in the charged offenses.

For the foregoing reasons, we object to the application of U.S.S.G. § 3A1.4, the "Terrorism" enhancement.

November 21, 2019
Hon. Paul A. Engelmayer
Page 7 of 7

                                                Respectfully submitted,

                                                Susan G. Kellman
                                                Sarah Kunstler
                                                Carlos Santiago

                                                *Attorneys for Sajmir Alimehmeti*
                                                25 Eighth Avenue
                                                Brooklyn, NY 11217
                                                (718) 783-8200
                                                sgk@kellmanesq.com

CC:    AUSA Emil Bove
         AUSA George Turner
         UPSO Ross Kapitansky